DECISION AND JUDGMENT ENTRY
{¶ 1} Swanton Township Board of Trustees ("board of trustees") appeals the judgment of the Lucas County Common Pleas Court to reverse its decision to deny appellee, Ron Eckel, a special use permit. Because the trial court did not abuse its discretion, we affirm.
 {¶ 2} On October 6, 2002, Eckel filed an application with Swanton Township, requesting a special use permit to deepen the existing 12-acre pond on his property by 10 to 15 feet. A public hearing on the application was held January 20, 2003 before the board of trustees after the Lucas County Planning Commission and the Swanton Township Zoning Commission had reviewed the application and recommended its approval with certain conditions. Sworn testimony was heard from Eckel and two other witnesses in support of the application. The board of trustees, however, voted to disapprove the request. Eckel filed an administrative appeal pursuant to R.C. 2506.01 with the Lucas County Court of Common Pleas. After reviewing the record, the common pleas court found that the decision of the board of trustees was arbitrary, capricious, unreasonable, and unsupported by the evidence and reversed the decision of the board of trustees. The board of trustees now appeals.
 Assignments of Error {¶ 3} "I. The court of common pleas abused its discretion when it reversed the decision of the Swanton Board of Trustees by finding its decision to be arbitrary and capricious and unsupported by reliable, probative and substantial evidence.
 {¶ 4} "II. The court of common pleas abused its discretion by substituting its own judgment for that of the Swanton Township Board of Trustees."
 Standard of Review {¶ 5} The standard of review by the common pleas court is set forth in R.C. 2506.04 and states as follows:
 {¶ 6} "The court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court. The judgment of the court may be appealed by any party on questions of law as provided in the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505. of the Revised Code."
 {¶ 7} The standard of review to be applied by a court of appeals, pursuant to R.C. 2506.04, however, is more limited in scope than the review by a court of common pleas. Henley v.Youngstown Bd. of Zoning Appeals (2000), 90 Ohio St.3d 142, 147. In Henley, the Ohio Supreme Court stated, in pertinent part:
 {¶ 8} "Construing the language of R.C. 2506.04, we have distinguished the standard of review to be applied by common pleas courts and courts of appeals in R.C. Chapter 2506 administrative appeals. The common pleas court considers the `whole record,' including any new or additional evidence admitted under R.C. 2506.03, and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence. See Smith v. Granville Twp.Bd. of Trustees (1998), 81 Ohio St.3d 608, 612, 693 N.E.2d 219,223, citing Dudukovich v. Lorain Metro. Hous. Auth. (1979),58 Ohio St.2d 202, 206-207, 12 O.O.3d 198, 201-202, 389 N.E.2d 1113,1116-1117.
 {¶ 9} "The standard of review to be applied by the court of appeals in an R.C. 2506.04 appeal is `more limited in scope.' (Emphasis added.) Kisil v. Sandusky (1984), 12 Ohio St.3d 30,34, 12 OBR 26, 30, 465 N.E.2d 848, 852. `This statute grants a more limited power to the court of appeals to review the judgment of the common pleas court only on "questions of law," which does not include the same extensive power to weigh "the preponderance of substantial, reliable and probative evidence," as is granted to the common pleas court.' Id. at fn. 4. `It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. * * * The fact that the court of appeals, or this court, might have arrived at a different conclusion than the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so.'Lorain City School Dist. Bd. of Edn. v. State Emp. RelationsBd. (1988), 40 Ohio St. 3d 257, 261, 533 N.E.2d 264, 267." Id. at 147.
 {¶ 10} Thus, an appellate court is required to affirm the common pleas court unless it finds, as a matter of law, that the decision of the common pleas court is not supported by a preponderance of reliable, probative and substantial evidence.Kisil, supra, at 34. In making such a finding, this court applies an abuse of discretion standard. Nichols v. HinckleyTwp. Bd. of Zoning Appeals (2001), 145 Ohio App.3d 417, 421. An abuse of discretion connotes more than an error of law or judgment; it implies that the action of the trial court was unreasonable, arbitrary or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. Therefore, this court must affirm the common pleas court unless we find that the lower court abused its discretion in determining that the decision of the board of trustees was not supported by a preponderance of reliable, probative and substantial evidence.
 {¶ 11} Because the second assignment of error challenges whether Eckel's application complies with the requirements of the zoning ordinance, we will address the assignments of error in reverse order.
 Second Assignment of Error {¶ 12} In the second assignment of error, the board of trustees contends that the trial court abused its discretion because Eckel's application did not comply with the zoning ordinance requirements.
 {¶ 13} R.C. 519.02 authorizes a township to regulate building and land use "for the purpose of promoting the public health, safety, and morals." Pursuant to this enabling legislation, Swanton Township enacted the Swanton Township Zoning Resolution. Section 7.1 states:
 {¶ 14} "In addition to uses specifically classified and permitted in each District in this Resolution, there are certain additional uses which it may be necessary to allow because of their unusual characteristics or the service they provide the public. These `special uses' require particular consideration as to their proper location in relation to adjacent established or intended uses, or the planned development of the community. The `special uses' fall into two (2) categories, as follows:
 {¶ 15} "7.1.1 Uses either municipally operated, or uses traditionally affected by public interest.
 {¶ 16} "7.1.2 Uses entirely private in character, which, because of their peculiar locational needs or the nature of the service they offer to the public, may have to be established in a district or districts, in which they cannot reasonably be allowed as a permitted use under the zoning regulations."
 {¶ 17} Section 7.2.1 sets forth a list of 19 special uses. Eckel applied for a permit under Section 7.2.1(d), which provides for the "Development of natural resources, including the extraction of sand, gravel, fill dirt, topsoil and stone."
 {¶ 18} The board of trustees argues that Eckel's plan to dreg his 12-acre pond does not constitute the development of a natural resource and that Eckel did not submit any evidence to satisfy either Section 7.1.1 or 7.1.2. We note that "[z]oning ordinances are in derogation of the common law. They deprive a property owner of uses of his land which he would otherwise be entitled and, therefore, when interpretation is necessary, such enactments are normally construed in favor of the property owner." Cash v.Brookshire United Methodist Church (1988), 61 Ohio App.3d 576,579, citing In re Appeal of University Circle, Inc. (1978),56 Ohio St.2d 180. While the board of trustees refers us to a dictionary definition of "natural resource," the resolution, itself, defines the "development of natural resources" to include the extraction of sand, which is exactly what Eckel wants to do in order to deepen his pond.
 {¶ 19} Also, contrary to the board of trustees' assertion, there was evidence of "peculiar locational needs or the nature of the service" under Section 7.1.2. The witnesses testified that deepening of the pond was necessary to sustain fish life and to prevent the pond from becoming a breeding ground for mosquitoes. In addition, deepening of the pond would benefit Maumee State Forest, which adjoins Eckel's property to the north and east, by improving the drainage and collection of excess water from the forest.
 {¶ 20} Having examined the record, we conclude that the court of common pleas did not improperly substitute its own judgment for that of the board of trustees in reaching its decision. The second assignment of error is not well-taken.
 First Assignment of Error {¶ 21} In the first assignment of error, the board of trustees argues that the trial court erred because the issuance of a special use permit is discretionary and Eckel's plans were ill-prepared, incomplete, and vague. As a result of their concerns over unanswered questions regarding the process to be used and the need for a water study, the board of trustees contends it did not act arbitrarily, capriciously or unreasonably when it denied the special use permit application.
 {¶ 22} The language of Section 2 of the Swanton Township Zoning Resolution does indicate that the issuance of a special use permit is discretionary. It defines "special use" as "a use other than a use by (or as of) right, subject to review and approval/disapproval by the Board of Township Trustees." Therefore, the sole issue for the lower court was to determine whether there was reliable, probative and substantial evidence that the board of trustees' decision bore a reasonable relationship to the public health, safety, or morals. The common pleas court found that the board of trustees "engaged in much debate and speculation about mining operations, the potential for groundwater contamination and the need to keep excavated materials in the township" and noted that the fate of the excavated sand seemed the primary concern. After stating that there was no evidence showing that the removal of the soil would be detrimental to the public health, safety, and morals, the court determined that the board of trustees' decision to deny the permit request was based upon the personal feelings and emotions of the trustees and therefore was arbitrary, capricious, unreasonable, and unsupported by the evidence.
 {¶ 23} The board of trustees contends at the hearing it expressed concerns regarding ground water contamination, effects on local water tables and erosion issues. The evidence at the hearing, however, dispelled these concerns. Eckel testified that erosion would not be an issue because the banks of his pond slope 8 to 1, instead of the normal 3 to 1. With regard to ground water contamination, one trustee remarked that the larger the surface area and more input of water into the pond, the greater the risk of the ground water becoming contaminated by agricultural contaminants and "fuel contaminates flying overhead." The application, however, did not seek to increase the surface area of the pond, but merely to deepen it. Eckel testified that there are already sewer and water lines in the area; therefore drinking water would not be affected. In addition, there was testimony that while the area is zoned agricultural, it has large, private residences and very few agricultural operations so there would not be much risk of increased agricultural contamination. As for the water tables, the evidence showed that when Eckel deepened the pond in 1989 or 1990 during drought conditions the water supply for surrounding properties was not affected.
 {¶ 24} The board of trustees also argues that Eckel did not know whether an engineering study was required to obtain a mining permit from the Ohio Department of Natural Resources ("ODNR") and because of this confusion it was not unreasonable to deny the permit request.[1] At the hearing, Eckel testified that he had talked with a representative of the ODNR and that since he did not intend to use a dewatering process to deepen the pond he was informed that he was not required to obtain an engineering study to receive a mining permit. One of trustees then indicated he had also talked with the ODNR representative and had reviewed information on the internet. From this, the trustee stated that he believed an engineering study was necessary if water was going to be pumped. Whether an engineering study is required to obtain a mining permit under these circumstances, however, is a decision for the ODNR, not the board of trustees. Both the Lucas County Planning Commission and the Swanton Township Zoning Commission recommended approval of the permit application with the condition that Eckel obtain all necessary permits from the ODNR prior to the commencement of any excavation and that he follow the ODNR's rules and regulations. Granting the application on these conditions would safeguard the public health, safety, and morals and would also allow the proper authority to decide whether an engineering study was required.
 {¶ 25} It is clear from the record that the overriding concern of the board of trustees was that some of the excavated sand was going to be removed from the property. The board of trustees even stated that the permit application would likely be approved if Eckel changed his plans to use the fill entirely on site. At the hearing and in its brief, the board of trustees also made unsupported allegations that the site was going to be a commercial mining operation.
 {¶ 26} Since there is no evidence that removal of the sand or any of the plan Eckel proposed would detrimentally impact the public health, safety, or morals, the common pleas court did not abuse its discretion in finding that the decision of the board of trustees was arbitrary, capricious, unreasonable and unsupported by the evidence. The first assignment of error is not well-taken.
 {¶ 27} The judgment of the Lucas County Court of Common Pleas is hereby affirmed. Pursuant to App.R. 24, court costs are assessed to appellant.
Judgment Affirmed.
Knepper, J., Pietrykowski, J., Lanzinger, J., concur.
[1] Pursuant to R.C. 1514.02(A)(16), an applicant for a surface mining permit is required to submit a compilation of data for the ODNR to conduct a ground water modeling in order to establish a projected cone of depression if the applicant's operation may result in dewatering.