DECISION AND JUDGMENT ENTRY
{¶ 1} This is a consolidated appeal from a judgment of the Fulton County Court of Common Pleas that reversed the decision of the Swan Creek Township Board of Zoning Appeals ("board") and ordered the board to issue appellees a conditional use permit for sand and topsoil excavation on their property. For the reasons that follow, this court reverses the judgment of the trial court.
 {¶ 2} The undisputed facts relevant to the issues raised on appeal follow. Appellees, Shaun M. Parker and Robert H. Parker, Jr., share an ownership interest in a 73.9-acre parcel of land in Swan Creek Township, Fulton County, through a land contract. The record reflects that on March 17, 2003, Shaun and Robert filed an application on behalf of their business, Sandman Trucking, Inc., for a conditional use permit for "sand and topsoil excavation" from the property. The application referred to a "mining operation" which would excavate a "pit" 18 feet below the water table. It also indicated the "mine site" would be reclaimed as a 35-acre "private recreational lake with adjoining residential housing." The property in question is zoned "agricultural and rural estate district" ("AG/RE") pursuant to the Swan Creek Township Zoning Resolution ("zoning resolution"). This application was denied by the township zoning inspector pursuant to the township zoning code, which requires that "any proposed pond larger than three-quarters (¾) of an acre shall be reviewed by the Board of Zoning Appeals as a conditional use." Swan Creek Township Zoning Code, Article 100-8.2(10)(b).
 {¶ 3} The record reflects a second request was submitted in the name of appellee Nancy Parker, Shaun and Robert's mother, seeking a permit to dig a 16.9-acre "pond" for private residential use. A copy of the second request is not contained in the record, although it is undisputed that Nancy Parker submitted the request in July 2003. Details as to the nature of the second request are gleaned from testimony at the hearings held by the township board of zoning appeals and from the decisions of the board and the trial court. According to the trial court's decision, the second application requested permission to: excavate a 16.9-acre "pond" on the property, sell and truck out the topsoil and excess soil resulting from the construction of the pond over a three-to-five year period, build a home for Nancy Parker on the site, and landscape the premises after construction of the pond and home.
 {¶ 4} The township board of zoning appeals held public hearings on appellees' request on August 14 and September 11, 2003. The board heard sworn testimony from appellees and other witnesses both for and against granting the application. At the outset, counsel for appellees Shaun and Robert Parker, Jr. stated that the application was filed by Nancy Parker because she intended to build a house on the property along with the proposed pond. A builder hired by Nancy Parker testified he was working on plans for the house. Robert Parker, Sr., who owns a dump truck service used by Sandman, Inc., testified as to the details of digging the pond, building the house and landscaping the property. He stated he and his wife would give the 300,000 cubic yards of excess dirt and sand from the lake to their sons. He indicated that if his sons ran out of places to put the dirt on the property, "they can have the dirt to remove." Counsel for appellees stated the pond would be in harmony with the "appropriate and orderly development of the surrounding neighborhood and the applicable zoning regulations." Counsel estimated it would take approximately three years to remove enough soil to create the pond. He further stated that, "at the most," 45 to 50 truckloads a day, 5 days a week, would be required to remove the soil from the site.
 {¶ 5} Several individuals who own residential property adjacent to appellees' parcel spoke at the September 11, 2003, meeting and all expressed opposition to construction of the pond. Neighbors indicated concerns over: living for several years with noise from the excavation and heavy dump truck traffic; the dirt and dust that would be stirred up by the excavation; wear and tear on the roadbed; safety issues created by the volume of truck traffic, and interference with their domestic water supply which they believe would be caused by digging an 18-foot deep pit. Several neighbors also expressed concern that appellees would not build a home on the property once they received permission to excavate land from the site and that the planned home was a pretense or "smoke screen" for a mining operation intended solely for the benefit of Sandman, Inc.
 {¶ 6} After adjourning briefly to discuss the matter, the board reconvened for a formal vote. It voted unanimously that Nancy Parker was not the aggrieved party as contemplated by the zoning code and therefore not the proper person to request the permit. The board also voted unanimously to deny the permit.
 {¶ 7} The township zoning code sets forth eight "standards" the board is to apply when considering whether to grant a request for a variance. See Swan Creek Zoning Code, Article 100 — 21.5. Following is a summary of the factors to be considered pursuant to each standard and the board's finding as to each:
 {¶ 8} Standard 1: Location, size and character of the area will be in harmony with the surrounding neighborhood; zoning regulations — "The area * * * is zoned AG/RE. Mining operations are only permitted in areas zoned M-2. The adjacent properties are of a size that the pond, if constructed, would not conform to their character. * * * [T]he pond requested would be * * * one and one-half times the size of the adjacent lots."
 {¶ 9} Standard 2: The use will minimize hazards resulting from vehicular and pedestrian traffic — "If the request were to be granted, the traffic in the area would be drastically increased and would consist of heavy machinery that would pose a danger to existing traffic and residents. There are no sidewalks in the area which means the increased traffic would impact on pedestrians."
 {¶ 10} Standard 3: Will be designed so as to eliminate any possible nuisance created by dust, noise, fumes, vibration, smoke or lights — "The use of large machinery at all different times of the day and week would cause a nuisance to adjoining properties. There would also be an increase in noise, dirt, and other nuisance items with the digging of a pond this size. The request is for the removal of a majority of the dirt/sand excavated to form the pond which, in essence, makes this a mining operation which is prohibited in this zoning classification."
 {¶ 11} Standard 4: Will not unreasonably affect the value of adjacent buildings and lands — "Land values in the area would be decreased due to the noise, increased traffic and other offshoots of the proposed use."
 {¶ 12} Standard 5: Will be harmonious with the physical and economic aspects of the adjacent property — "There are no ponds in the area which approach the size of the pond requested in this instance."
 {¶ 13} Standard 6: Is necessary for public convenience — "There is no public convenience evidenced by the proposed use * * *."
 {¶ 14} Standard 7: Will protect the public health, safety and welfare — "The pond may impact on the water table of adjacent properties by decreasing the available water for existing private wells and causing the water in the area to decrease. There was no testimony to the contrary."
 {¶ 15} Standard 8: Will not cause substantial injury to the value of other property in the area — "The use of the property will adversely affect the value of other property in the area since there will be an excavation of approximately 300,000 cubic yards of sand off the site, with the commensurate large machinery traffic and noise. According to witnesses, the Parkers have, in the past, requested that they be allowed to build a pond but, once it is mined, the proposed homes for the Parkers around the pond are not constructed."
 {¶ 16} In conclusion, the board stated: "* * * [T]he request to build such a pond is, actually, an attempt to circumvent the requirements for mining and, in essence, the request is for a mining operation to be instituted. The zoning code states that no sand or dirt shall be removed from the premises with the excavation of a pond. The request in this instance is that the sand and dirt be taken off site, thereby making this request one for a mining permit, which is not permitted in this zoning classification. This is further exemplified by the prior request of the Parkers for a mining operation on this property and this request which was verbatim from the prior request."
 {¶ 17} Appellees appealed the board's decision to the Fulton County Court of Common Pleas pursuant to R.C. 2506.04. In a decision journalized September 21, 2004, the trial court found that Nancy Parker is an interested party and denied appellants' motion to dismiss filed on that basis. Further, the trial court found that the board's findings were "conclusory and anecdotal, and not substantive nor scientific." The trial court concluded that the decision of the board was "arbitrary, capricious, unreasonable, and unsupported by the Evidence." The court reversed the board's decision and directed it to issue appellees a conditional use permit. It is from that judgment that appellants appeal.
 {¶ 18} The standard of review to be applied by the common pleas court is set forth in R.C. 2506.04 and states: "The court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record."
 {¶ 19} The standard of review to be applied by a court of appeals pursuant to R.C. 2506.04 is more limited in scope than that used by the court of common pleas. Henley v. Youngstown Bd.of Zoning Appeals (2000), 90 Ohio St.3d 142, 147. An appellate court is required to affirm the common pleas court unless it finds, as a matter of law, that the decision of the common pleas court is not supported by a preponderance of reliable, probative and substantial evidence. Kisil v. Sandusky (1984),12 Ohio St.3d 30, 34. In making such a finding, this court applies an abuse of discretion standard. Nichols v. HinckleyTwp. Bd. of Zoning Appeals (2001), 145 Ohio App.3d 417, 421. An abuse of discretion implies more than an error of law or judgment; it implies that the action of the trial court was unreasonable, arbitrary or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. Therefore, this court must affirm the common pleas court unless we find the lower court abused its discretion in determining that the decision of the Swan Creek Board of Zoning Appeals was not supported by the evidence.
 {¶ 20} R.C. 519.02 authorizes a township to regulate building and land use "for the purpose of promoting the public health, safety, and morals." Accordingly, Swan Creek Township enacted the Swan Creek Township Zoning Code.
 {¶ 21} Article 100-8 of the Swan Creek Township Zoning Code ("zoning code") regulates development on land such as that owned by appellees zoned as AG/RE district. Pursuant to Article 100-8.2, ponds are designated as a permitted use of such land. Appellees have used the term "pond" to describe the digging they plan to undertake. Article 100-8.2(10) sets forth the area and design requirements for ponds and states that a pond shall be a maximum of ¾ of an acre and that maximum surface area shall not exceed 25 percent of the net acreage of the parcel. Any proposedpond larger than ¾ of an acre shall be reviewed by the Board ofZoning Appeals as a conditional use. Appellees' planned 16.9 acre "pond" would be slightly less than 25 percent of the total acreage of their land. The section also states that "[e]xcessdirt may be redistributed on the parcel, but may not be removedfrom the site." (Emphasis added.) It also requires the pond to be fenced.
 {¶ 22} The burden of production and persuasion is upon the applicant requesting a conditional use permit. See NorthfieldCenter Dev. Corp. v. City of Macedonia (June 3, 1998), 9th Dist. No. 18547. In the case before us, the language of Article 100-21.5 of the zoning code suggests the applicant has the burden of convincing the board that its plan complies with the eight standards summarized above.
 {¶ 23} Appellants, Gary and Sherrie Harden, who live adjacent to appellees' property, have submitted their own brief. Appellants Swan Creek Township, Swan Creek Township Trustees and Walter Hallett, III, the Swan Creek zoning inspector, have jointly submitted a separate brief. We will address appellants' assignments of error separately.
 {¶ 24} The Hardens present two assignments of error in support of their appeal:
 {¶ 25} "A. The trial court erred in ordering the BZA to issue Appellees a conditional use permit because Appellees' proposed use is not a permissible conditional use under the Swancreek Township Zoning Resolution.
 {¶ 26} "B. Appellees' application does not qualify for a use variance because the property interest was acquired with knowledge of the zoning restrictions."
 {¶ 27} First, the Hardens assert that the board does not have authority to issue the conditional use permit requested by appellees. R.C. 519.14(C) provides the authority to issue conditional use permits. It states that the township board of zoning appeals may "[g]rant conditional zoning certificates for the use of land, buildings, or other structures if such certificates for specific uses are provided for in the zoning resolution." A pond for residential use is generally a permitted use within the AG/RE district for which a conditional use permit is not necessary, as long as the pond is no larger than ¾ acre and the excess dirt is not removed from the site. Article 100-8.2(10)(b) and (e). According to testimony presented at the hearings, the "pond" appellees wish to create would encompass 16.9 acres. A proposed pond larger than ¾ acre must be reviewed by the board as a conditional use. However, the zoning code defines a "pond" as a body of open water which is more than ½ acre and less than 2 acres in size. A body of water of two ormore acres is defined by the zoning code as a "lake." Article 100-23. Based on the foregoing, the body of water appellees planned to create was not a pond but a lake; the zoning code allows the board to issue conditional use permits only for ponds that are less than 2 acres in size. The board of zoning appeals clearly is not authorized to issue a conditional use permit for a body of water 16.9 acres in size — i.e., a lake. Appellants' first assignment of error is well-taken.
 {¶ 28} In support of their second assignment of error, appellants assert the zoning board properly denied the application because appellees acquired their property interest with knowledge of the zoning restrictions. In light of our finding as to the Hardens' first assignment of error, their second assignment of error is moot.
 {¶ 29} Appellants, Swan Creek Township, Swan Creek Township Trustees and the Swan Creek Township zoning inspector ("Swan Creek"), set forth three assignments of error:
 {¶ 30} "I. The Trial Court Abused Its Discretion When It Reversed The Decision Of The Swan Creek Township Board Of Zoning Appeals by Finding that the Decision of the Board of Zoning Appeals was Arbitrary, Capricious and Unsupported by Reliable, Probative and Substantial Evidence.
 {¶ 31} "II. The Trial Court Abused Its Discretion by Substituting Its Judgment for that of The Swan Creek Township's Board Of Zoning Appeals.
 {¶ 32} "III. The Trial Court Erred As A Matter Of Law When It Allowed Nancy A. Parker to Request a Conditional Use Permit as She Lacked Standing In This Matter."
 {¶ 33} Swan Creek's first two assignments of error will be addressed together as both essentially assert the trial court erred by reversing the decision of the board of zoning appeals. In its first assignment of error, Swan Creek asserts the board's decision was supported by evidence relevant to each of the eight "standards" set forth in the zoning code (Article 100-21.5). In support of its second assignment of error, Swan Creek asserts that by substituting its judgment for that of the board of zoning appeals, the trial court interfered with the board's ability to function in its administrative capacity. Swan Creek also asserts that the trial court erroneously relied on the earlier decision of this court in Eckel v. Swanton Twp. Bd. of Trustees, 6th Dist. No. L-03-1289, 2004-Ohio-4855.
 {¶ 34} As we noted above, a common pleas court is bound by the nature of administrative proceedings and must presume the decision of the administrative agency is reasonable and valid.Northfield Center Dev. Corp., supra, citing CommunityConcerned Citizens, Inc. v. Union Twp. Bd. of Zoning Appeals
(1993), 66 Ohio St. 3d 452, 456. A common pleas court may not blatantly substitute its judgment for that of the administrative agency. See Dudukovich v. Lorain Metro Hous. Auth. (1979),58 Ohio St. 2d 202, 207. Instead, the common pleas court may only reverse if it finds the "decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable and probative evidence on the whole record." R.C. 2506.04. The key term in the foregoing is "preponderance." If a preponderance of reliable, probative and substantial evidence exists, the court of common pleas must affirm the agency's decision; if it does not exist, the court may reverse, vacate, modify or remand. Thus, our inquiry is limited to a determination of whether, as a matter of law, we can say there existed a preponderance of reliable, probative and substantial evidence to support the board's decision to deny the conditional use application. If so, we must reverse the judgment of the court of common pleas.
 {¶ 35} As Swan Creek notes, the trial court based its decision in large part on the decision of this court in Eckel v.Swanton Twp. Bd. of Trustees, 6th Dist. No. L-03-1289,2004-Ohio-4855. The trial court found that the instant case is very similar, "at least in principle," to Eckel. We believe the trial court's reliance on Eckel was misplaced. In Eckel, the common pleas court reversed the decision of the township board of trustees to deny a landowner's request for a special use permit to deepen an existing 12-acre pond on his property by 10 to 15 feet. This court held that the landowner's request complied with the requirements of the zoning ordinance and affirmed the trial court. It must be noted, however, that Eckel involved a different factual scenario as well as a different set of zoning regulations since it arose in Swanton Township in Lucas County. We do not find fault with our decision in Eckel but believe the decision must be limited to the facts of that case. The case before us now must be evaluated in terms of the Swan Creek Township Zoning Code, the specifics of appellees' request, and the evidence before the board of zoning appeals.
 {¶ 36} This court has thoroughly reviewed the testimony adduced at the two hearings before the board of zoning appeals, along with the other evidence presented. The board heard Robert Parker, Sr. testify that approximately 300,000 cubic yards of excess sand would be removed from the property. Parker later stated that he would give the excess sand to his sons in exchange for their doing the excavation. When asked what his sons would do with the sand, he responded, "I don't care what they do to it. Give it away, haul it away, because there is not enough room here." Parker's apparent intent to give the soil to his sons and thereafter abdicate responsibility for its removal from the property appears to be a thinly disguised attempt to circumvent the requirement set forth in Article 100-8.2(10)(e) that all soil excavated when digging a pond remain on the premises. Further, counsel for the Parkers acknowledged that the process of digging the "pond" would constitute a "mining operation." Counsel estimated that 45 to 50 loads of soil would be hauled away each day, five days a week, for approximately three years. A local realtor testified that while he has never seen property decrease in value because of a lake beside it, it is "very possible" that property values could deteriorate as a result of an ongoing mining operation nearby.
 {¶ 37} The evidence before the appeals board clearly revealed the commercial nature of appellees' request. Under the guise of creating a large "pond" for their private recreational use, appellees would subject their neighbors to a three- to five-year mining operation essentially in their back yards bringing with it dirt, dust, noise, heavy truck traffic and wear-and-tear on the local roads.
 {¶ 38} The evidence demonstrated that the "conditional use" sought by appellees did not comply with any of the eight standards set forth in Article 100-21.5 of the zoning code. It is clear from the board's written decision that it evaluated appellees' request in light of each of the standards. The trial court, however, did not address the standards set forth in the zoning code as they relate to the concerns expressed by neighbors who attended the hearings and submitted letters to the board. The trial court merely stated that the board's findings and the testimony elicited in support "were conclusionary (sic) and anecdotal, and not substantive nor scientific." It appears that, rather than presume the decision of the board was reasonable and valid pursuant to Union Township, supra, the court of common pleas substituted its judgment for that of the board. Upon consideration of the foregoing, we conclude the decision of the board of zoning appeals was supported by a preponderance of the evidence and the court of common pleas abused its discretion in reversing the board's decision. Accordingly, we find appellants' first and second assignments of error well-taken.
 {¶ 39} In their third assignment of error, appellants assert Nancy Parker lacked standing in this matter and the trial court erred by allowing her to request the conditional use permit because she did not own the property in question.
 {¶ 40} Under Article 100-21.6 of the Swan Creek Township Zoning Code, appeals to the board are allowed "by any person aggrieved." The code does not define "aggrieved person." The record reflects Nancy Parker requested the conditional use permit and appealed the inspector's denial to the board of zoning appeals. In its written decision after the hearings, the board found that Nancy Parker is not an "aggrieved party" as contemplated by the zoning code and therefore not the proper party to appeal the denial of the permit. On appeal to the court of common pleas, the Parkers argued that Nancy Parker is an "aggrieved person" because she would own the house that is to be built on the property. The trial court found without explanation that she "is a very real and `interested party' to the present controversy."
 {¶ 41} Upon questioning by the board at the beginning of the first hearing, counsel for Shaun and Robert Parker stated that although Nancy Parker filed the application, she did not currently have an ownership interest in the property. He clarified that her sons own the property and would be entering into a transaction with their mother allowing her to build a house on the property.
 {¶ 42} Appellees now assert that Nancy Parker has an interest in the premises although it has not been reduced to writing. They argue that she was entitled to appeal because the zoning inspector, after denying the initial application, advised Parker she would have to file an appeal with the board. There is no evidence in the record of such a conversation, although Parker was sent a letter notifying her of the date and time of the hearing. Upon learning that the request was denied, the township's attorney advised the zoning inspector that Parker was entitled to a hearing. Appellees appear to interpret that sequence of events as proof that Nancy Parker had standing to appeal the decision denying her application. However, a careful reading of the transcript of the August 11 hearing and the questions asked by the members of the board reflects that they were not initially aware Nancy Parker did not have ownership interest in the land.
 {¶ 43} The Parkers do not dispute that Nancy does not own any part of the land on which they wished to create the "pond." Appellees acknowledge on appeal that Nancy Parker's "interest has not been reduced to writing." It is clear the land is owned by her sons Robert Jr. and Shaun Parker, who also own Sandman Trucking, Inc., which happens to be in the excavation business. Appellees have presented no legitimate explanation for pushing the application and subsequent appeal through under the name of an individual who has no ownership interest in the land on which the digging would take place. Although Robert Parker, Sr. testified he and his wife wished to build a home on the property next to the "pond" after it was dug, at the time of the hearing that was but a distant plan, since it would take three to five years to excavate the "pond." It is clear from the record that Shaun Parker and Robert Parker, Jr. were the aggrieved parties. Nancy Parker did not have standing to appeal the decision of the zoning inspector and, accordingly, appellants' third assignment of error is well-taken.
 {¶ 44} Upon consideration whereof, this court finds substantial justice was not done the parties complaining. The decision of the Fulton County Court of Common Pleas is reversed and the decision of the Swan Creek Township Board of Zoning Appeals is reinstated. Appellees are ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Fulton County.
Judgment Reversed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J., Pietrykowski, J., Parish, J., concur.