[Cite as *Scasny v. Mayfield*, 2016-Ohio-5517.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 103583**


**TIM SCASNY, ET AL.**

PLAINTIFFS-APPELLANTS

vs.

**VILLAGE OF MAYFIELD, ET AL.**

DEFENDANTS-APPELLEES


**JUDGMENT:**
AFFIRMED


Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-15-841464

**BEFORE:** Blackmon, J., S. Gallagher, P.J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** August 25, 2016

**ATTORNEY FOR APPELLANTS**

Bryan L. Carr
1392 SOM Center Road
Mayfield Heights, Ohio 44124


**ATTORNEYS FOR APPELLEES**

Frank H. Scialdone
Tami Z. Hannon
John T. McLandrich
Mazanic, Raskin, Ryder Co., L.P.A.
100 Franklin's Row
34305 Solon Road
Cleveland, Ohio 44139

Mark V. Guidetti
Joseph W. Diemert & Associates
1360 SOM Center Road
Cleveland, Ohio 44124

PATRICIA ANN BLACKMON, J.:

{¶1} Appellants Tim Scasny and Lynne Hamill (collectively referred to as "Scasny")[1] appeal the trial court's decision affirming the decision of the appellee Mayfield Village Council ("Council"),[2] denying Scasny's request to have the ability to cook in the second building on his property. Scasny assigns the following error for our review:

I. The trial court erred when it ruled in favor of the appellees' interpretation of their Codified Ordinance and in denying the appellants' request for declaratory judgment.

{¶2} Having reviewed the record and pertinent law, we affirm the trial court's decision.

{¶3} The dispute between the parties concerns alterations that were made to a second building on Scasny's property. In 2002, Scasny initially obtained approval to construct a 292 square foot detached two-car garage that included a driveway. The two-car garage has now become a 644 square foot two level building with a bathroom that includes a toilet and tub; a kitchen area with a kitchen sink and cooking area; a laundry room with a washer and dryer; a large recreation room with cable television; the two levels are air conditioned; and the building contains a furnace and hot water heater. Scasny now refers to the building as a "little house" and a "man cave."

{¶4} Despite the disputes over the years between the Village and Scasny regarding the structure, the only issue that remains unresolved is whether Scasny, pursuant to the Village's ordinances, should be permitted to have cooking facilities in the structure.[3] The Village's Board

---

[1] Scasny and Hamill are married and both own and reside on the property.

[2] Scasny also named as defendants the Village of Mayfield, Mayfield Village Board of Zoning Appeals, and John Marrelli, the Building Commissioner of Mayfield Village.

[3] The parties entered into a joint settlement agreement in which they agreed that Scasny would not "use" the building as a "second habitable dwelling" and that it would not be used as such by any future owner of the property. The agreement specifically states that the "Plaintiffs' administrative appeal surrounding the instructions that the building

of Zoning Appeals ("BZA") denied Scasny's request to be able to cook on the premises and the Council affirmed the BZA's decision.

**{¶5}** Scasny appealed the Council's decision, and the trial court affirmed, stating as follows:

> The court affirms the decision of the Village of Mayfield in prohibiting an electric cooktop or cooking appliances in the secondary building. The court finds the Village's ruling was not unconstitutional, illegal, arbitrary, capricious, or unreasonable, and was supported by a preponderance of substantial, reliable, and probative evidence.

Journal Entry, September 25, 2015.

## Analysis

**{¶6}** In his sole assigned error, Scasny argues that the trial court erred by agreeing with the Council's application of the Village's ordinance regarding the prohibition against cooking in Scasny's structure.[4]

## R.C. 2506.04

**{¶7}** Common pleas courts and appellate courts apply different standards of review to appeals brought pursuant to R.C. Chapter 2506. R.C. 2506.04 provides that if a party appeals an administrative decision, the common pleas court "may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record." R.C.

---

cannot contain a cooktop remains pending." The fact that Scasny agreed that the structure would not be used as a dwelling does not change the fact that it has all the capabilities of being used as a dwelling. Therefore, the cooking issue is still an issue.

[4]The Village argues that Scasny waived any argument regarding the cooking prohibition because he failed to raise it in the court below. Although he did not engage in an in-depth analysis, he did raise the issue in his motion on pages 9 and 12, and the issue was debated at the various zoning meetings. Thus, we will address the issue.

2506.04 further provides that the common pleas court judgment "may be appealed by any party on questions of law."

{¶8} In *Henley v. Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 147, 2000-Ohio-493, 735 N.E.2d 433, the Ohio Supreme Court explained the applicable standard of review as follows:

[W]e have distinguished the standard of review to be applied by common pleas courts and courts of appeals in R.C. Chapter 2506 administrative appeals. The common pleas court considers the "whole record," including any new or additional evidence admitted under R.C. 2506.03, and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence. *See Smith v. Granville Twp. Bd. of Trustees*, 81 Ohio St.3d 608, 612, 693 N.E.2d 219 (1998), citing *Dudukovich v. Lorain Metro. Hous. Auth.*, 58 Ohio St.2d 202, 206-207, 389 N.E.2d 1113 (1979), * * *.

The standard of review to be applied in an R.C. 2506.04 appeal is "more limited in scope." *Kisil v. Sandusky* (1984), 12 Ohio St.3d 30, 34, 12 OBR 26, 465 N.E.2d 848, 852. "This statute grants a more limited power to the court of appeals to review the judgment of the common pleas court only on 'questions of law,' which does not include the same extensive power to weigh 'the preponderance of substantial, reliable and probative evidence,' as is granted to the common pleas court." *Id*. at fn. 4. "It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court.* * * The fact that the court of appeals * * * might have arrived at a different conclusion than the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so. *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 261, 533 N.E.2d 264, 267." *Id*. at 147.

**{¶9}** Thus, our more limited review requires us to "affirm the common pleas court, unless [we find], as a matter of law, that the decision of the common pleas court is not supported by a preponderance of reliable, probative and substantial evidence." *Cummings v. Cleveland*, 8th Dist. Cuyahoga No. 99200, 2013-Ohio-2541, quoting *Kisil*, 12 Ohio St.3d at 34, 465 N.E.2d 848. Within the ambit of "questions of law" includes whether the common pleas court abused its discretion. *Henley* at 148. However, as the Fourth District court explained:

> Although the abuse of discretion standard usually affords maximum defense to the lower court, no court retains discretion to adopt an incorrect legal rule or to apply an appropriate rule in an inappropriate manner. Such a course of conduct would result in an abuse of discretion. *See* Harsha, William, H., *The Substance of Appeal*, 17 Ohio Lawyer, No. 6, 17. We make such a determination as with other questions of law on a de novo basis.

*Safest Neighborhood Assn. v. City of Athens Bd. Of Zoning Appeals*, 4th Dist. Athens Nos. 12CA32, 12CA33, 12CA34, 12CA35, 2013-Ohio-5610, ¶ 16.[5]

**{¶10}** Scasny clarified at oral argument that he is arguing that the common pleas court incorrectly applied Mayfield Village Codified Ordinance 1113.08(f) to his property.

**{¶11}** At the outset, we point out that applying the undisputed facts of the underlying case to determine whether the trial court properly applied the ordinance does not turn the issue of statutory interpretation into a question of fact. As the Ohio Supreme Court in *Independence v. Office of the Cuyahoga Cty. Exec.*, 142 Ohio St.3d 125, 2014-Ohio-4650, 28 N.E.3d 1182, held:

> The county relies on a statement in *Henley*, 90 Ohio St.3d at 148, 735 N.E.2d 433, quoting Black's Law Dictionary 1260 (7th Ed.1999), that application of a zoning ordinance to the facts "is a 'question of law'—'[a]n issue to be decided by the judge, concerning the application or interpretation of the law.'" *See also Brennaman v. R.M.I. Co.*, 70 Ohio St.3d 460, 466, 639 N.E.2d 425 (1994)

---

[5]We find the Ohio Supreme Court's use of the "abuse of discretion" standard in reviewing "matters of law" to be perplexing. As the Fourth District acknowledges, the trial court would never have the discretion to misapply or misinterpret a law or ordinance. Thus, while the Supreme Court has used the "abuse of discretion" language, we as an appellate court usually review matters of interpretation or application of law by the lower court de novo.

(holding that whether a facility was an improvement to real property under R.C. 2305.131 was a question of law when the facts were undisputed). Statutory interpretation presents a question of law. *Riedel v. Consol. Rail Corp.*, 125 Ohio St.3d 358, 2010-Ohio-1926, 928 N.E.2d 448, ¶ 6. The necessity of considering the facts or the evidence to determine whether a legislative act applies to a particular case does not turn the issue of statutory interpretation into a question of fact. *Henley* at 148.

*Id.* at ¶ 18.

{¶12} It is undisputed that the property on which Scasny resides is zoned as U-1 residential housing. According to Mayfield Village Codified Ordinances 1153.02(a), Class U-1 uses include: (1) single-family dwelling; (2) farming, nursery, truck gardening, or (3) any municipal use by the Municipality. Moreover, the property is further designated as being in the U-1 District that is within the Class A-1 District that applies the further restriction that "no building shall be used and no building shall be erected which is arranged, intended or designed to be used as a semi-detached single family dwelling or double house." Mayfield Village Codified Ordinances 1157.01. Thus, pursuant to these zoning ordinances, Scasny is only permitted to have one single-family dwelling on his property.

{¶13} Scasny claims his family is not living in the structure but fails to provide a classification under which the structure would qualify pursuant to the ordinance. Scasny admits in the documents below and in his brief, that it is more akin to a "little house" or "man cave." Although, admittedly, transients do not use the structure, transients are not material to the definition of an accessory living accommodation.

{¶14} Mayfield Village Codified Ordinances 1113.08 lists the definition for "dwellings" and "living accommodations" as follows:

(a) "Dwelling unit" means space within a dwelling, comprising living, dining, sleeping room or rooms, storage closets, as well as space and equipment for

cooking, bathing, and toilet facilities, all used by only one family and its household employees.

(b)    "Dwelling" means a building designed or occupied exclusively for nontransient residential use and permitted accessory uses, including one-family, two-family or multi-family buildings.

(c)    "One-family dwelling" means a dwelling consisting of a single dwelling unit with the main entrance to its living quarters at ground level.

(1)  "Detached dwelling" means a one-family dwelling which is separated from all other dwelling units by open space on all sides.

(2)    "Semi-attached dwelling" means a one-family dwelling which is constructed as one of two one-family dwellings attached by a common fireproof party   wall.

(3)  "Attached dwelling" means a one-family dwelling which is constructed as one of a sequence of three or more one-family dwellings attached by common fireproof party walls.

(d)  "Two-family dwelling" means a building consisting of two dwelling units one above the other, having either a separate or combined entrance or entrances.

(e)    "Apartment dwelling" means a dwelling comprised of three or more dwelling units arranged one above the other and side by side, with each unit having at least one entrance to a common hall leading to the exterior.

 (f)   "Accessory living accommodations" means a building, or part thereof, used solely as accommodations for occupants, personal guests, or persons employed on the premises or other nonpaying transients and in which no cooking or similar housekeeping equipment is provided. * * *.[6]

{¶15} Under the above definitions, Scasny's structure qualifies as a "dwelling unit" if cooking is permitted within the building.  "Accessory living accommodations" are differentiated from a "dwelling unit" by the fact that an accessory living accommodation does not allow cooking equipment.  Thus, by designating Scasny's "little house" as an "accessory living accommodation," Scasny is permitted to keep his expensive upgrades without violating the

---

[6]The remaining classifications (g) Dormitory; (h) Foster home; (j) Tourist home; and, (k) Motel, obviously do not apply.

Village's zoning code. That is, if Scasny's structure is a dwelling that he can sleep, eat, and live in, this would result in him having two dwellings on one parcel of land, which would clearly violate the Village's zoning code. However, by eliminating the cooking component, the structure could remain without violating the code.

{¶16} The Building Commissioner, the BZA, and the Council, would not have the power to reclassify Scasny's property to allow U-2 housing. The only way that Scasny would be able to have two dwelling units on his property would be to rezone his property by referendum pursuant to Article III, Section 13 of Mayfield Village's Charter.

{¶17} We conclude the trial court's application of Mayfield Village Ordinance 1113.08(f) was supported by reliable, probative, and substantial evidence.

## Declaratory Judgment

{¶18} We also conclude the trial court did not err by denying Scasny's complaint for declaratory judgment. Scasny contends that the Village's zoning ordinances regarding the restriction on "cooking" in dwelling units are vague and ambiguous.

{¶19} We review a trial court's determination on a declaratory judgment action for an abuse of discretion, independently and without deference to the trial court's decision. *Mid-American Fire & Cas. Co.*, 113 Ohio St.3d 133, 2007-Ohio- 1248, 863 N.E.2d 142, at ¶ 12-14. Our review of the ordinance shows no ambiguity regarding the prohibition against cooking in "accessory living accommodations."

{¶20} Scasny attempts to create an ambiguity by referring to ordinances that concern "dwelling units." Mayfield Village Codified Ordinances 1159.04 and 1157.03 both deal with a "dwelling unit" and the "habitable floor area" required for "living, sleeping, eating, or cooking." Mayfield Village Ordinance 1113.08(b) defines the general term "dwelling" and 1157.06 states

an accessory use is incident to the Class in the lot in which it is located. None of these ordinances conflict with the definition of an "accessory living accommodation," which prohibits cooking.

{¶21} Additionally, Scasny makes much ado about the fact that the "accessory living accommodation" definition states that "no cooking equipment" is to be "provided." It does not state that cooking is "prohibited." However, without providing cooking equipment, no cooking can occur. Thus, the meaning is one and the same. Moreover, because Scasny is the owner of the property, by placing cooking equipment in the structure, he would in fact be "providing" the equipment.

{¶22} Finally, "a zoning regulation is presumed to be constitutional unless determined by a court to be clearly arbitrary and unreasonable and without substantial relation to the public health, safety, morals, or general welfare of the community." *Goldberg Cos. v. Council of Richmond Hts.*, 81 Ohio St.3d 207, 209, 690 N.E.2d 510 (1998), syllabus. Here, as argued by the Village before the BZA, allowing cooking in a structure that does not comply with fire and safety protocols that apply to dwelling units creates a safety issue. Thus, prohibiting cooking in "accessory living accommodations" has a substantial relationship to safety. Accordingly, the trial court did not abuse its discretion by denying Scasny declaratory relief. Scasny's sole assigned error is overruled.

{¶23} Judgment is affirmed.

It is ordered that appellees recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
PATRICIA ANN BLACKMON, JUDGE

ANITA LASTER MAYS, J., CONCURS;
SEAN C. GALLAGHER, P.J., DISSENTS;
SEE ATTACHED DISSENTING OPINION

SEAN C. GALLAGHER, J., DISSENTING:

**{¶24}** I dissent. The Mayfield Village Codified Ordinances do not prohibit the installation of cooking equipment in a detached structure per se. The Village justified its prohibition based on two sections of its ordinances, section 1157.01 and 1113.08, both of which I would find to be inapplicable.

**{¶25}** Mayfield Village Codified Ordinance section 1157.01 places the restriction on Scasny's property, zoned as a U-1 District within a Class A-1 District, that "no building shall be used as a semi-detached single family dwelling or double house." The phrases "semi-detached" and "double house" are not defined. The meaning of "semi-detached" is irrelevant to the current case. It is undisputed that the building at issue is a detached structure, meaning all four walls are independent of the primary building on the property so that the "semi-detached" provision is not applicable. *See* Mayfield Village Codified Ordinance 1113.06(f) ("detached building" means a building surrounded by open space); 1113.08(c)(2) ("semi-attached dwelling" is a one-family dwelling constructed with a common fireproof party wall). In addition, the

Village has never maintained that the "accessory building," as defined in section 1113.06(d) and not to be confused with an "accessory living accommodation," is a "double house."

{¶26} In the agreed judgment entry entered between the Village and Scasny, the parties agreed that the detached structure is not to be used as a second single-family dwelling — a building designed or occupied exclusively for nontransient residential use and permitted accessory uses. A dwelling unit is defined as a "space within a dwelling, comprising living, dining, sleeping room or rooms, storage closets, as well as space and equipment for cooking, bathing and toilet facilities, all used by only one family and its household employees." Mayfield Village Codified Ordinance 1113.08. Thus, section 1157.01 is not a basis for precluding Scasny from placing cooking equipment in the detached structure. The definition of dwelling and dwelling unit does not solely rely on the existence of cooking equipment alone. Although the Village maintains that Scasny could use the building as a sleeping room, there is no evidence that the recreational room and the storage room, as shown in the renderings, are actually sleeping rooms. If there is no sleeping room, the existence of cooking equipment is irrelevant; the area still could not be considered a "dwelling unit."

{¶27} Finally, section 1113.08 does not does not prohibit, or even permit, a secondary stand-alone "accessory living accommodation." It only defines an "accessory living accommodation" to include any part of a building used solely as accommodations and in which no cooking equipment is provided. In light of the undisputed fact that Scasny is seeking to install cooking equipment in his accessory building, it seems logical to conclude that no portion of the detached structure can be deemed an "accessory living accommodation." Even if it were an "accessory living accommodation," nothing in the Village's ordinances allows residents to maintain an "accessory living accommodation"; the phrase is only defined. The detached

structure remains in a gray area. It is not a second dwelling or a dwelling unit per agreement between the parties, but it is not an "accessory living accommodation" either.

{¶28} This building began its life as a permissible accessory building under the accessory use allowance in section 1157.06. To some extent, the structure retains the vestiges of its utilitarian origin. In the Village's decision from which the underlying appeal was taken, the Village mandated that Scasny install fire-code drywall between the tractor storage space and the rest of the area. This, along with the fact that Scasny replaced the overhung garage door with large hinged doors, reflects that the structure retains characteristics indicative of a permissible accessory building. Its use is another matter altogether. Nothing in the accessory use section, however, precludes using the permitted structure in various ways in addition to its defined use. As the Village has conceded, in struggling to articulate a basis to preclude Scasny's "man cave," the addition of any one feature to an existing accessory building, such as a bathroom, T.V., or other amenity, does not transform the structure's intended use. It is only the combination of amenities that does this, but the Village's ordinances provide for this. A structure, or part thereof, becomes a dwelling unit when it has living, dining, sleeping room or rooms, storage closets, as well as space and equipment for cooking, bathing, and toilet facilities. The absence of any one is enough to prevent the structure from being deemed and used as a dwelling unit. The Village could have simply precluded Scasny from creating a sleeping room if the Village's argument is accepted. Section 1157.06 of the Village's ordinances does not preclude the installation of cooking equipment. In light of the fact that the detached structure is not a single-family dwelling or a demonstrable dwelling unit, its existence does not violate any of the ordinances cited by the Village.

**{¶29}** I would find that the Village's attempt to preclude the installation of cooking equipment was an arbitrary decision. As the Village conceded at oral argument, the electric cooking equipment was unacceptable to the Village, yet Scasny would be well within his rights to install a barbecue. Frankly speaking, this makes little sense and weighs on my conclusion that the Village's preclusion of cooking equipment was an arbitrary decision. The Village's rationale in precluding the installation of cooking equipment was to prevent Scasny or any future owner from using the building as a dwelling unit, but this was accomplished through an agreed judgment entry, so the Village's need to further prevent the installation of cooking equipment is moot. I would reverse the trial court's decision.