OPINION
{¶ 1} Appellant, Melvin M. Kipp, appeals from the decision of the Clermont County Common Pleas Court, affirming the decision of the Stonelick Township Board of Zoning Appeals ("BZA"), denying his application for a conditional use permit.
 {¶ 2} Appellant owns a gravel mining operation in Stonelick Township. In 1999, he acquired a 35-acre parcel of property adjacent to his existing operation. The property is zoned "`S' Suburban Residence District" under the Stonelick Township Zoning Resolution ("STZR").[1] In October 2001, appellant applied to Stonelick Township's BZA for a conditional use permit to allow him to mine gravel on the 35-acre parcel. The BZA held hearings on appellant's application over four days in February, May, June and July 2002. At the close of the hearings, the BZA, by a three-to-two vote, denied appellant's application for a conditional use permit on the basis that it could not "attach conditions sufficient to protect the neighboring houses from noise, dust or other detrimental effects that operation of the mine will have on them."
 {¶ 3} Appellant appealed the BZA's decision to the Clermont County Common Pleas Court. On September 15, 2003, the common pleas court affirmed the BZA's denial of appellant's application for a conditional use permit. The court found that mining was neither a "permitted use" nor "conditional use" in an "S" Suburban Residence District. The common pleas court alternatively found that even if mining was a conditional use in an "S" Suburban Residence District, there was a preponderance of substantial, reliable and probative evidence supporting the BZA's determination that there were no conditions that it could attach to the proposed mining operation that would adequately protect nearby property owners from noise, dust or other detrimental effects.
 {¶ 4} Appellant appeals from the common pleas court's decision, raising two assignments of error.
 {¶ 5} Assignment of Error No. 1:
 {¶ 6} "The trial court erred by holding that the stonelick township board of zoning appeals lacked the authority to issue a conditional use permit for mining to appellant Melvin M. Kipp."
 {¶ 7} Assignment of Error No. 2:
 {¶ 8} "The trial court abused its discretion when it held that the denial of kipp's application for a conditional use permit by the stonelick township board of zoning appeals was not unconstitutional, illegal, arbitrary, capricious and unreasonable and was supported by a preponderance of the reliable, probative and substantial evidence on the whole record."
 {¶ 9} In his first assignment of error, appellant argues that the common pleas court erred in finding that the Stonelick Township BZA lacked the authority to issue a conditional use permit for mining in land situated in an "S" Suburban Residence District under the STZR. We agree with this argument.
 {¶ 10} The term "use" is a term of art[2] in zoning law. A "use" is "an activity permitted by the zoning classification applicable to the district in which the land is situated." Young v. Bd. of Zoning Appeals (Feb. 4, 2000), Montgomery App. No. 17877. "Zoning ordinances typically provide for two types of uses: permitted and conditional. Permitted uses are those allowed as of right, provided the landowner meets all other requirements, e.g., building code requirement. Conditional uses (also known as special exceptions) are also allowed in the zoning code, but they are uses that may have a significant impact and thus require an administrative hearing for approval." Meck and Pearlman, Ohio Planning and Zoning Law (2004 Ed.) 387, Section 9:11.
 {¶ 11} Under the STZR, the "E" Estate Residence District and "S" Suburban Residence District both contain two types of uses: (1) those listed under "Use Regulations" and (2) "Uses Permitted as Special Exceptions." The uses listed under "Use Regulations" in both zoning districts are the type generally referred to as "permitted uses," i.e., uses allowed as a matter of right, while the "Uses Permitted as Special Exceptions" are the type generally referred to as "conditional uses," i.e., uses that require administrative approval. See Meck and Pearlman, Ohio Planning and Zoning Law, 387, Section 9:11.
 {¶ 12} As we have previously indicated, the property at issue is situated in an "S" Suburban Residence District of the STZR. Section 7.1(1) of the STZR allows a building or premises in an "S" Suburban Residence District to be used for "[a]ny use permitted in [an] `E' Estate Residence District." The common pleas court interpreted the term "use" to include the "permitted uses" listed under the "Use Regulations" in Section 6.1, butnot the "Uses Permitted as Special Exceptions" in Section 6.1A, which included "Mining and Extraction of Minerals or Raw Minerals." The common pleas court found that since mining was not a "permitted use" under Section 6.1, it did not fall within the definition of "[a]ny use permitted in [an] `E' Estate Residence District[,]" for purposes of Section 7.1(1). This constituted error.
 {¶ 13} Section 7.1(1) of the STZR allows a building or premises in an "S" Suburban Residence District to be used for "[a]ny use permitted in [an] `E' Estate Residence District." (Emphasis added.) The plain meaning of the phrase "[a]ny use" includes any "conditional use" as well as any "permitted use" in an "E" Estate Residence District. See Gillespie v. Stow (1989),65 Ohio App.3d 601, 608 ("A use which the [zoning code] conditionally permits can not be a nonpermitted use.") Section 7.1(1) does not limit its reach to the "permitted uses" listed under the "Use Regulations" set forth in Section 6.1, as the common pleas court found. In this regard, we note that the words "any use permitted" do not have the same meaning as the term "any permitted use," as the court below found. Consequently, we conclude that the common pleas court erred in determining that the Stonelick Township BZA lacked authority to issue a conditional use permit for gravel mining in an "S" Suburban Residence District. However, we conclude that this error was harmless, in light of our resolution of appellant's second assignment of error.
 {¶ 14} In his second assignment of error, appellant contends that the common pleas court abused its discretion when it upheld the BZA's denial of his application on the alternative grounds that the BZA's decision was not unconstitutional, illegal, arbitrary, capricious or unreasonable, and was supported by a preponderance of reliable, probative and substantial evidence. He first contends that the BZA used inappropriate standards in reviewing his application. He also asserts that the BZA's decision was not supported by a preponderance of the evidence.
 {¶ 15} When reviewing an administrative appeal brought pursuant to R.C. 2506.04, "[t]he common pleas court considers the `whole record,' * * * and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence." Henley v. Youngstown Bd. ofZoning Appeals, 90 Ohio St.3d 142, 147, 2000-Ohio-493. The court of appeals' standard of review in such appeals is more limited in scope and requires that the common pleas court's decision be affirmed unless the court of appeals finds, as a matter of law, that the decision is not supported by a preponderance of reliable, probative and substantial evidence. Smith v. Granville Twp. Bd. of Trustees, 81 Ohio St.3d 608, 613, 1998-Ohio-340.
 {¶ 16} In this case, the common pleas court upheld the BZA's decision to deny appellant's application on the basis that it could not attach conditions that would sufficiently protect neighboring properties from noise, dust or other detrimental effects that the gravel mining operation would have on them. We cannot say that this decision is not supported by a preponderance of reliable, probative or substantial evidence.
 {¶ 17} Several of the neighboring property owners testified to the significant amounts of dust and noise generated from appellant's current mining operation. They also expressed their concerns that the proposed expansion of the mining operation would generate even more dust and noise due to the fact that it would be even closer to their homes than the current mining operation. For his part, appellant acknowledged that his expanded mining operation will produce noise and dust, but claimed that those effects will be ameliorated by his proposed conditions of a 50-foot setback requirement and the establishment of an eight-foot high mound. However, appellant's own witness acknowledged that the mound would be constructed only as expansion of the mining operation proceeded through the property; it therefore would not be fully in place until a substantial amount of mining activity had already occurred. As the common pleas court concluded, the BZA was entitled to consider the detrimental effects of dust and noise stemming from the current mining operations and to logically infer that the effects of the proposed expansion of the operation would increase those detrimental effects, due to its close proximity to the homes of the neighboring property owners. In this regard, it should be noted that the property in question is in close proximity to approximately 27 residences. By contrast, appellant's current mining operations affect only two or three residences.
 {¶ 18} There was also sufficient evidence to support the BZA's determinations that (1) the proposed mining operation would have a negative impact on the values of the neighboring properties, due to the dust and noise it would generate, as well as its lack of aesthetic appeal; and (2) the mining operation would pose a safety risk for any children living or visiting in the area. Appellant contends that these factors were not appropriate matters for the BZA's consideration. We disagree with this contention.
 {¶ 19} A potential decrease in the values of neighboring properties and safety hazards to neighborhood children were legitimate matters for the BZA to consider in determining whether to grant or deny appellant's permit, as they constitute "detrimental * * * effects incidental to [the proposed mining] operation[.]" Section 6.1A(1) of the STZR. Furthermore, property owners are competent to testify regarding the market value of their properties, Smith v. Padgett (1987), 32 Ohio St.3d 344,347, and there was testimony in this case from some of the owners of the neighboring properties that the value of their property had already decreased in value as a result of the existing mining operation. Furthermore, one witness testified that there are numerous children in the neighborhood and expressed a concern for their safety in light of the proposed mining operation. It was reasonable for the BZA to conclude that the gravel mining operation could pose an "attractive nuisance" for them, and that those children could be injured as a result.
 {¶ 20} Appellant also challenges the common pleas court's decision to affirm the BZA's ruling on the basis that the BZA improperly imposed "an economic benefit requirement" upon his application. His evidence for this largely centers on statements that one BZA member made immediately before the BZA's vote on his application was taken, wherein the member stated that a "gravel pit * * * is not going to bring us any dollars for our schools." However, this same member also stated that he was very concerned about the dust arising from the proposed expansion of the mining operations, and the negative effect the mining operation would have on the property values. These latter two factors were legitimate concerns. Most importantly, the resolution on which the BZA members voted was not based on whether appellant's proposed expansion of his gravel mining operation would economically benefit the township, but instead on the legitimate concerns of the dust and noise arising from the proposed expansion of the mining operation. Therefore, we view the comments of the BZA member as, at most, harmless error. See Civ.R. 61. In light of the foregoing, we conclude that the common pleas court did not abuse its discretion in affirming the decision of the BZA to deny appellant's application for a conditional use permit.
 {¶ 21} Appellant's second assignment of error is overruled. Our ruling on appellant's second assignment of error renders it unnecessary for us to rule on appellant's first assignment of error. See App.R. 12(A)(1)(c).
 {¶ 22} Judgment affirmed.
Powell and Walsh, JJ., concur.
 APPENDIX Selected Provisions of the STZR ARTICLE VI "`E' ESTATE RESIDENCE DISTRICT (Footnote omitted.)
"* * *
"SECTION"6.1 Use Regulations
 "A building or premises shall be used only for the following purposes:
"1. Agriculture * * * [.] (Footnote omitted.)
"2. Single family dwellings.
"* * *
"SECTION"6.1A Uses Permitted as Special Exceptions
 "The following uses shall be considered special exceptions and will require written approval of the Board of Appeals.
 "1. Mining and Extraction of Mineral or Raw Materials. The Board may attach such conditions and safeguards as it deems necessary to protect neighboring properties or districts from fire hazards or smoke, noise, odor, dust, or any other detrimental or obnoxious effects incidental to such operation, in addition, the Board shall require a written agreement, approved by the Board, from the owners of such operation to the effect that, upon termination of such operation, the land involved shall be reclaimed to as near its original state as is practical in the opinion of the Board.
"* * *
"3. Radio and Television transmitters and antennas.
"4. Mobile Homes[.] (Footnote omitted.)
"* * *
"5. Telecommunication Towers and Antennas[.]
"* * *
"6. Bed and Breakfast[.]
"* * *
 "ARTICLE VII "`S' SURBURBAN RESIDENCE DISTRICT
"* * *
"SECTION"7.1 Use Regulations
 "A building or premises shall be used only for the following purposes:
 "1. Any use permitted in `E' Estate Residence District.
"2. Home Occupations.
"3. Two family dwelling.
"SECTION"7.1A Uses Permitted as Special Exceptions
 "The following uses shall be considered special exceptions and will require written approval of the Board of Appeals.
"* * *
 "3. Telecommunication Towers and Antennas[.] (Footnote omitted.)
"* * *
"4. Bed and Breakfast[.] (Footnote omitted.)"
[1] Selected provisions of the STZR have been set forth in the appendix to this opinion.
[2] A "term of art" is "[a] word or phrase having a specific, precise meaning in a given specialty, apart from its general meaning in ordinary contexts." Black's Law Dictionary (7 Ed. 1999) 1483.