[Cite as *Homan v. Franklin Twp. Bd. of Zoning Appeals*, 2018-Ohio-3717.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MERCER COUNTY

TIMOTHY J. HOMAN,

      PLAINTIFF-APPELLANT,                CASE NO. 10-18-04

      v.

FRANKLIN TOWNSHIP BOARD OF
ZONING APPEALS,                       O P I N I O N

      DEFENDANT-APPELLEE.

Appeal from Mercer County Common Pleas Court
Trial Court No. 16-CIV-046

Judgment Affirmed

Date of Decision: September 17, 2018

APPEARANCES:

    *John A. Gleason* for Appellant

    *Andrew J. Hinders* for Appellee

**PRESTON, J.**

{¶1} Plaintiff-appellant, Timothy J. Homan ("Homan"), appeals the January 18, 2018 judgment entry of the Mercer County Court of Common Pleas affirming defendant-appellee's, the Franklin Township Board of Zoning Appeals ("BZA"), decision to deny Homan's application for a conditional-use permit. For the reasons that follow, we affirm the decision of the trial court.

{¶2} Homan has operated a nursery business on his property in Franklin Township, Mercer County, Ohio for more than 30 years. (Appellant's Brief at 1). In late 2015, Homan began remodeling a dilapidated barn on the property. (*Id.*). Around the same time, Homan's son, Timothy Homan Jr. ("Homan Jr."), was running a "machine shop" in a building that he leased for that purpose. (Mar. 7, 2016 Tr. at 7-8). Eventually, Homan Jr.'s lease expired, and he was forced to move the equipment used in his business. (*See id.*). After some discussion, Homan and Homan Jr. decided that Homan Jr. would relocate his equipment to the newly-renovated barn to allow Homan Jr. to continue his machining business. (*Id.* at 7-9). However, in January 2016, the township zoning inspector visited Homan's barn and informed Homan that he would need to apply for a conditional-use permit to continue using the barn to house Homan Jr.'s machine shop. (Sept. 19, 2016 Tr. at 13-15). (*See* Mar. 7, 2016 Tr. at 6-7).

{¶3} Homan subsequently submitted an application for a conditional-use permit, which came before the BZA for a hearing on March 7, 2016. (*See* Mar. 7, 2016 Tr. at 6). The BZA rejected Homan's application for a conditional-use permit. (*Id.* at 63-64). (*See* Sept. 19, 2016 Hearing Exs., Appellant's Ex. 1). Thereafter, on April 6, 2016, Homan appealed the BZA's denial of his application for a conditional-use permit to the Mercer County Court of Common Pleas. (Doc. No. 3).

{¶4} On July 7, 2016, the trial court remanded the matter to the BZA with "instructions to supplement the record with the evidence admitted at the original proceedings before it on March 7, 2016, with the specific authority to reconvene the hearing on [Homan's] application for a grant of conditional use of his premises so that additional evidence may be taken and a new order and decision may be issued by the [BZA] * * *." (Doc. No. 19). In accordance with the trial court's July 7, 2016 order, the BZA reconvened on September 19, 2016 to further consider Homan's application for a conditional-use permit. (*See* Sept. 19, 2016 Tr. at 6-7). At the close of the hearing, the BZA denied Homan's application for a conditional-use permit. (*Id.* at 83-85). On October 24, 2016, the trial court reopened Homan's appeal of the BZA's decision. (Doc. No. 27).

{¶5} Following a hearing on January 11, 2018, the trial court affirmed the BZA's decision denying Homan's application for a conditional-use permit on January 18, 2018. (*See* Doc. Nos. 56, 59).

{¶6} On February 16, 2018, Homan filed a notice of appeal. (Doc. No. 64). He raises two assignments of error, which we will address together.

**Assignment of Error No. I**

**The trial court erred in holding that appellant's use was not a conditional use.**

**Assignment of Error No. II**

**The trial court erred by not holding that appellee failed to comply with R.C. 2506.04 when it denied appellant's application while allowing similar uses in the same district.**

{¶7} In his assignments of error, Homan argues that the trial court erred by affirming the BZA's decision denying his application for a conditional-use permit. Specifically, in his first assignment of error, Homan argues that the Franklin Township Zoning Code (the "Code") is ambiguous as to whether his use is a conditional use in the relevant zoning district, that the trial court was required to construe this ambiguity in his favor, and that because the trial court did not construe the Code in his favor when it found that his use is not a conditional use, the trial court erred by affirming the decision of the BZA. In addition, in his second assignment of error, Homan asserts that the trial court erred by affirming the decision of the BZA because the BZA arbitrarily, illegally, and unreasonably denied

-4-

his application for a conditional-use permit while allowing similar uses to continue operating in the same zoning district.

{¶8} "R.C. Chapter 2506 governs appeals from decisions by agencies of political subdivisions, such as township zoning boards." *Genovese v. Beckham*, 9th Dist. Summit No. 22814, 2006-Ohio-1174, ¶ 6, citing *Earth 'N Wood Prods., Inc. v. Akron Bd. of Zoning Appeals*, 9th Dist. Summit No. 21279, 2003-Ohio-1801. "Under R.C. 2506.01, a party may appeal a local agency's final administrative decision to the applicable court of common pleas." *Id.* "Then, R.C. 2506.04 empowers the court of common pleas to act with certain, limited appellate authority as to the challenged administrative decision." *Id.*, citing *Summit Cty. Bd. of Health v. Pearson*, 9th Dist. Summit No. 22194, 2005-Ohio-2964, ¶ 7. R.C. 2506.04 supplies the standard of review used by courts of common pleas in such appeals:

> If an appeal is taken in relation to a final order, adjudication, or decision covered by division (A) of section 2506.01 of the Revised Code, the court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body

appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court. The judgment of the court may be appealed by any party on questions of law as provided in the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505. of the Revised Code.

Thus, "[i]n an R.C. 2506.01 administrative appeal, the common pleas court considers the whole record and determines whether the administrative order is 'unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence.'" *Independence v. Office of the Cuyahoga Cty. Executive*, 142 Ohio St.3d 125, 2014-Ohio-4650, ¶ 13, citing R.C. 2506.04 and *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 147 (2000). "The [common pleas court] weighs the evidence to determine whether a preponderance of reliable, probative, and substantial evidence supports the administrative decision, and if it does, the court may not substitute its judgment for that of the board." *Id.*, citing *Dudukovich v. Lorain Metro. Hous. Auth.*, 58 Ohio St.2d 202, 207 (1979). "If it does not, the court may reverse, vacate, or modify the administrative decision." *Id.*, citing *Dudukovich* at 207 and R.C. 2506.04. "Although a hearing before a common pleas court pursuant to R.C. 2506.01 is not a de novo review, 'it often in fact resembles a de novo proceeding.'" *Cleveland Clinic Found. v. Cleveland Bd. of Zoning Appeals*, 141 Ohio St.3d 318,

2014-Ohio-4809, ¶ 24, quoting *Cincinnati Bell, Inc. v. Glendale*, 42 Ohio St.2d 368, 370 (1975).

{¶9} "By contrast, the standard of review for an appellate court reviewing a judgment of a common pleas court in this type of appeal is narrower and more deferential to the [common pleas] court's decision." *Id.* at ¶ 25, citing *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34 (1984). The Supreme Court of Ohio has "stressed that the 'standard of review to be applied by the courts of appeals in an R.C. 2506.04 appeal is "*more limited* in scope."'" (Emphasis sic.) *Id.*, quoting *Henley* at 147, quoting *Kisil* at 34. "The courts of appeals may review the judgments of the common pleas courts only on questions of law; they do not have the same power to weigh the evidence." *Id.*, citing *Henley* at 147. "'It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. * * * The fact that the court of appeals * * * might have arrived at a different conclusion than the administrative agency is immaterial.'" *Henley* at 147, quoting *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.*, 40 Ohio St.3d 257, 261 (1988). "The court of appeals must affirm unless it finds, as a matter of law, that the trial court's decision is not supported by a preponderance of reliable, probative, and substantial evidence." *Independence* at ¶ 14, citing *Kisil* at 34. *See Kurutz v. Cleveland*, 8th Dist. Cuyahoga No. 105899, 2018-Ohio-2398, ¶ 8 ("In this context, a reversal 'as a matter of law' can occur only when, having viewed the evidence

most favorably to the decision, there are no facts to support the common pleas court decision.").

**{¶10}** This court has recognized that Ohio courts of appeals review the decisions of trial courts in R.C. Chapter 2506 administrative appeals under an abuse-of-discretion standard. *E.g.*, *Toledo Edison Co. v. Bd. of Defiance Cty. Commrs.*, 3d Dist. Defiance No. 4-13-04, 2013-Ohio-5374, ¶ 18, citing *Briggs v. Dinsmore Twp. Bd. of Zoning Appeals*, 161 Ohio App.3d 704, 2005-Ohio-3077, ¶ 7 (3d Dist.); *Crist v. Battle Run Fire Dist. Bd. of Trustees*, 105 Ohio App.3d 111, 115 (3d Dist.1995). Nevertheless, it is unclear whether a traditional abuse-of-discretion standard of review is, in fact, the correct standard of review.[1] In *Cleveland Clinic Foundation*, the Supreme Court of Ohio was called on to decide a "narrow issue: the proper standard of review for courts to apply in appeals, pursuant to R.C. 2506.04, from decisions of zoning authorities that restrict the use of property." 141 Ohio St.3d 318, 2014-Ohio-4809, at ¶ 2. In resolving that issue, the Supreme Court

---

[1] Indeed, some Ohio courts of appeals have questioned the abuse-of-discretion standard's status as the overarching standard of review for courts of appeals in R.C. Chapter 2506 administrative appeals. As noted by the Eighth District Court of Appeals, "the Ohio Supreme Court's use of the 'abuse of discretion' standard in reviewing 'matters of law' [is] perplexing" given that "trial court[s] would never have the discretion to misapply or misinterpret a law or ordinance" and that "appellate court[s] usually review matters of interpretation or application of law by the lower court de novo." *Scasny v. Mayfield*, 8th Dist. Cuyahoga No. 103583, 2016-Ohio-5517, ¶ 9, fn. 5. At least one other Ohio appellate court has made similar observations. *See Safest Neighborhood Assn. v. Athens Bd. of Zoning Appeals*, 4th Dist. Athens Nos. 12CA32, 12CA33, 12CA34 and 12CA35, 2013-Ohio-5610, ¶ 16 ("Although the abuse of discretion standard usually affords maximum defense to the lower court, no court retains discretion to adopt an incorrect legal rule or to apply an appropriate rule in an inappropriate manner. Such a course of conduct would result in an abuse of discretion. * * * We make such a determination as with other questions of law on a de novo basis."). *See also State v. Boles*, 187 Ohio App.3d 345, 2010-Ohio-278, ¶ 26 (2d Dist.) ("No court—not a trial court, not an appellate court, nor even a supreme court—has the authority, within its discretion, to commit an error of law.").

did not couch the courts of appeals's standard of review in terms of "abuse of discretion." In fact, aside from observing that the Eighth District Court of Appeals twice concluded that the trial court abused its discretion, the term "abuse of discretion" is not mentioned in the court's opinion. Rather, the Supreme Court held that "the standard of review for courts of appeals in administrative appeals * * * permits reversal only when the common pleas court errs in its application or interpretation of the law or its decision is unsupported by a preponderance of the evidence as a matter of law." *Id.* at ¶ 30. The court ultimately reversed the Eighth District because it concluded that the trial court's original decision was supported by "the preponderance of substantial, reliable, and probative evidence," not because it concluded that the Eighth District incorrectly determined whether the trial court abused its discretion. *Id.* at ¶ 42. Similarly, in *Independence*, the Supreme Court affirmed the appellate court's decision to affirm the trial court after concluding that the trial court's decision was based on "a preponderance of reliable, probative, and substantial evidence." 142 Ohio St.3d 125, 2014-Ohio-4650, at ¶ 39. Again, the Supreme Court did not explicitly frame the appellate standard of review as abuse of discretion despite noting that "[w]ithin the ambit of questions of law for appellate-court review is whether the common pleas court abused its discretion." *Id.* at ¶ 14, citing *Kisil* at 34, fn. 4.

{¶11} However, in a case decided less than one year before *Independence* and *Cleveland Clinic Foundation*, the Supreme Court observed that, in R.C. Chapter 2506 administrative appeals, "[t]he appellate court reviews the trial court's decision only on questions of law to determine whether the lower court abused its discretion in finding that the administrative order was supported by reliable, probative, and substantial evidence." *Boice v. Ottawa Hills*, 137 Ohio St.3d 412, 2013-Ohio-4769, ¶ 7, citing *Kisil* at 34. The Supreme Court concluded that the appellate court erred by upholding the trial court's decision because "the trial court's decision was unreasonable and arbitrary and, accordingly, was *an abuse of discretion.*" (Emphasis added.) *Id.* at ¶ 6.

{¶12} Yet, as stated above, this court has repeatedly and consistently concluded that the decisions of trial courts in R.C. Chapter 2506 administrative appeals are reviewed under an abuse-of-discretion standard, and it is not evident whether an alternative standard of review is required by the above-cited decisions of the Supreme Court of Ohio. Moreover, the standard of review used by this court when reviewing R.C. Chapter 2506 administrative appeals is generally consistent with the standards of review employed by our sister appellate districts. *See, e.g.*, *WRRS, L.L.C. v. Cleveland*, 8th Dist. Cuyahoga No. 105661, 2018-Ohio-2129, ¶ 12 ("[T]his court will review the judgment of the trial court only to determine if the lower court abused its discretion in finding that the administrative order was

supported by reliable, probative, and substantial evidence."), citing *Wolstein v. Pepper Pike City Council*, 156 Ohio App.3d 20, 2004-Ohio-361, ¶ 21-22 (8th Dist.); *JSS Properties II, L.L.C. v. Liberty Twp. Bd. of Zoning Appeals*, 5th Dist. Licking No. 17-CA-59, 2018-Ohio-1492, ¶ 7 ("[T]he standard of review for appellate courts in a R.C. 2506 appeal is 'whether the common pleas court abused its discretion in finding that the administrative order was or was not supported by reliable, probative, and substantial evidence.'"), quoting *Weber v. Troy Twp. Bd. of Zoning Appeals*, 5th Dist. Delaware No. 07 CAH 04 0017, 2008-Ohio-1163.

{¶13} It has also been recognized, however, that while "'courts of appeals have a limited scope of review on R.C. 2506 appeals, interpretation of a city's ordinance presents a question of law that must be reviewed de novo.'" *Jackson v. Cleveland Dept. of Bldg. & Hous.*, 8th Dist. Cuyahoga No. 97706, 2012-Ohio-3688, ¶ 8, quoting *Moulagiannis v. Cleveland Bd. of Zoning Appeals*, 8th Dist. Cuyahoga No. 84922, 2005-Ohio-2180, ¶ 10. *Accord Cleveland Clinic Found.*, 141 Ohio St.3d 318, 2014-Ohio-4809, at ¶ 25 ("'A question of statutory construction presents an issue of law that we determine de novo on appeal.'"), quoting *Lang v. Ohio Dept. of Job & Family Servs.*, 134 Ohio St.3d 296, 2012-Ohio-5366, ¶ 12. Thus, courts of appeals perform two distinct forms of review when evaluating a common pleas court's decision in an R.C. Chapter 2506 administrative appeal: "'On a question of fact, an appellate court's review is limited to an abuse of discretion. * * * [O]n a

question of law, an appellate court's review is de novo.'" *Dixon v. Caesarscreek Twp. Bd. of Zoning Appeals*, 2d Dist. Greene No. 2018-CA-1, 2018-Ohio-2549, ¶ 9, quoting *Key Ads, Inc. v. Dayton Bd. of Zoning Appeals*, 2d Dist. Montgomery No. 26148, 2014-Ohio-4961, ¶ 13, citing *Lamar Outdoor Advertising v. Dayton Bd. of Zoning Appeals*, 2d Dist. Montgomery No. 18902, 2002 WL 1349600, *2 (June 21, 2002) and *Ohio Dept. of Commerce, Div. of Real Estate v. DePugh*, 129 Ohio App.3d 255, 261 (4th Dist.1998). *See Alesi v. Warren Cty. Bd. of Commrs.*, 12th Dist. Warren Nos. CA2013–12–123, CA2013–12–124, CA2013–12–127, CA2013–12–128, CA2013–12–131 and CA2013–12–132, 2014-Ohio-5192, ¶ 27 ("[Courts of appeals] may only reverse if [they] find that either (1) the trial court abused its discretion in its determination as to whether the [administrative agency's] decision was supported by the preponderance of the evidence, or (2) that the trial court committed an error of law."). *See also One Neighborhood Condominium Assn. v. Columbus Dept. of Pub. Util., Div. of Water*, 10th Dist. Franklin No. 16AP-653, 2017-Ohio-4195, ¶ 14 ("The court of appeals' role in R.C. [Chapter] 2506[] appeals is limited to reviewing questions of law, which the court reviews de novo, and determining whether the court of common pleas abused its discretion in applying the law."). This bipartite form of appellate review is in keeping with the Supreme Court's statement that "the standard of review for courts of appeals in administrative appeals * * * permits reversal only when the common pleas court errs in its

application or interpretation of the law or its decision is unsupported by a preponderance of the evidence as a matter of law." *Cleveland Clinic Found.* at ¶ 30. Accordingly, we will review de novo whether the trial court correctly interpreted the Code but we will utilize an abuse-of-discretion standard to determine whether the trial court correctly concluded that the BZA's decision to deny Homan's application for a conditional-use permit was supported by reliable, probative, and substantial evidence. "Under a de novo review, we apply the same standards as the common pleas court without deference to the common pleas court's decision." *Key Ads, Inc.* at ¶ 14, citing *Gem City Metal Spinning Co. v. Dayton Bd. of Zoning Appeals*, 2d Dist. Montgomery No. 22083, 2008-Ohio-181, ¶ 18, citing *Brinkman v. Doughty*, 140 Ohio App.3d 494, 497 (2d Dist.2000). An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶14} In this case, the BZA's denial of Homan's application for a conditional-use permit was the specific administrative action reviewed by the trial court.

> "'Zoning ordinances typically provide for two types of uses: permitted and conditional. Permitted uses are those allowed as of right, provided the landowner meets all other requirements, e.g., building code requirement[s]. Conditional uses * * * are also allowed

in the zoning code, but they are uses that may have a significant impact and thus require an administrative hearing for approval.'"

*Dinardo v. Chester Twp. Bd. of Zoning Appeals*, 186 Ohio App.3d 111, 2010-Ohio-40, ¶ 23 (11th Dist.), quoting *Kipp v. Bd. of Zoning Appeals of Stonelick Twp.*, 12th Dist. Clermont No. CA2003-10-086, 2004-Ohio-5903, ¶ 10, quoting Stuart Meck & Kenneth Pearlman, *Ohio Planning and Zoning Law*, Section 9:11, at 387 (2004 Ed.).

The inclusion of conditional use provisions in zoning legislation is based upon a legislative recognition that although certain uses are not necessarily inconsistent with the zoning objectives of a district, their nature is such that their compatibility in any particular area depends upon surrounding circumstances. Thus, the legislative body provides for their inclusion in a district only upon administrative approval granted in accordance with legislatively prescribed standards and conditions.

*Gerzeny v. Richfield Twp.*, 62 Ohio St.2d 339, 341 (1980).

{¶15} A township board of zoning appeals's authority to grant conditional-use permits is derived from R.C. 519.14 which provides, in relevant part:

The township board of zoning appeals may:

* * *

-14-

(C) Grant conditional zoning certificates for the use of land, buildings,

or other structures if such certificates for specific uses are provided

for in the zoning resolution.

R.C. 519.14(C). "Thus, [R.C. 519.14(C)] does not vest township boards with power to grant conditional zoning certificates independent of the zoning resolution." *Gerzeny* at 342. "Rather, the board's power to issue such a certificate is no greater than that vested in it by the township zoning resolution." *Id.*

{¶16} The property for which Homan seeks a conditional-use permit is located in the A-2 (Prime Agriculture) District. (*See* Doc. No. 59). (*See also* Sept. 19, 2016 Hearing Exs., Appellee's Ex. C). Agriculture and Single-Family Dwellings are the principal permitted uses in the A-2 District. *See* Code Section 1127.17(A)-(C). The Conditional Uses list for the A-2 District provides as follows:

A building or premises may be used for the following purposes in the

A-2: Prime Agriculture District, if a Conditional Use Permit for the

use has been obtained in conformance with the provisions of Chapter

1131.

Principal Uses:

A. Airports

B. Animal Hospitals and Clinics

C. Cemeteries

D.   Farm and Heavy Equipment Sales and Service

E.   Grain Elevators and Feed Mills

F.   Mineral Extraction

G.   Mixed Uses

H.   Oil and Gas Wells

I.   Public Service Facilities

J.   Recreation, Commercial

K.   Recreation, Non-Commercial

L.   Recreation, Public

M.   Religious Places of Worship

Accessory Uses:

N.   Expanded Home Occupations

O.   Nurseries and Garden Supply Stores

P.   Private Landing Strips and Heliports

Q.   Seasonal Storage Facility

Code Section 1127.18(A)-(Q).

{¶17} Code Chapter 1131 sets forth the procedures that the BZA must follow and the substantive considerations that it must take into account when reviewing applications for conditional-use permits.  Code Section 1131.02, which sets forth general standards for all conditional uses, provides, in relevant part:

> In addition to the specific requirements for conditionally permitted uses as specified in this Section, the BZA shall review the particular facts and circumstances of each proposed use in terms of the following standards and shall find adequate evidence showing that such use at the proposed location:
>
> N. Is in fact a conditional use as established under the provisions of these Regulations and appears on the Conditional Uses list, adopted for the zoning district involved[.]

Code Section 1131.02(A). In addition, if the BZA approves an application for a conditional-use permit, it must "mak[e] an affirmative finding in writing that the proposed conditional use is to be located in a district wherein such use may be conditionally permitted * * *." Code Section 1131.03(A).

{¶18} The BZA first considered Homan's application for a conditional-use permit at a March 7, 2016 hearing. (Mar. 7, 2016 Tr. at 1, 4). At the beginning of the hearing, the BZA's secretary stated that "[Homan] * * * requests a conditional use for the changing of use of a commercial building located at [Kittle Road], Celina. The building will be used for manufacturing." (*Id.* at 6). Gary Schwieterman ("Schwieterman"), the township zoning inspector, said that Homan's property "is zoned A-2. Since [Homan] wishes to use a portion of the property for manufacturing, a conditional use permit is required." (*Id.* at 2, 6-7). Homan himself

described the use as manufacturing: "What I want to do to the barn is * * * have machinery, or whatever machinery and manufacturing." (*Id.* at 9). Homan further commented that the barn housed "CNC machines, where [they] machine metal parts." (*Id.* at 10). Homan briefly explained how a CNC machine works: "[A] CNC machine is a * * * small * * * mill source. Let's say you put a block of metal in it, and you can machine, like say you want to machine a pen, or something to this shape, you can machine that * * *." (*Id.* at 11). The characterization of Homan's use of the property as manufacturing was not challenged during the hearing.

{¶19} However, an attorney for an adjacent landowner questioned whether manufacturing is conditionally permitted in the A-2 District. (*Id.* at 17). A BZA member responded: "It's a conditional use." (*Id.*). In support of their position that manufacturing is a conditional use in the A-2 District, the BZA member said that a local attorney advised the BZA that it is a conditional use. (*Id.*). The BZA member further stated that "recreation and commercial" are listed as conditional uses in the A-2 District. (*Id.*). The attorney for the adjacent landowner responded, "It says recreation, commercial, as in commercial recreation." (*Id.* at 17-18). The BZA member then remarked that they were not "sure either, and that's why [they] called [the local attorney]" who assured them that Homan's manufacturing operation is a conditional use in the A-2 District. (*Id.* at 18). Despite the landowner's attorney's misgivings, the BZA proceeded to treat Homan's use as if it were a conditional use

in the A-2 District. (*See id.*). Ultimately, the BZA considered the conditional use criteria set forth in the Code, determined that Homan's use did not satisfy three of the criteria, and denied Homan's application. (*Id.* at 57-60, 64). (*See* Sept. 19, 2016 Hearing Exs., Appellant's Ex. 1).

{¶20} Following the trial court's remand to the BZA, Homan's application for a conditional-use permit was considered for a second time at a hearing on September 19, 2016. (*See* Sept. 19, 2016 Tr. at 1, 6-8). Homan's use was again characterized as manufacturing. Indeed, Homan stated that his son was using the barn "right now as a machine shop." (*Id.* at 16). Homan Jr. remarked that he does "not actually manufactur[e] firearms. [He] make[s] firearms parts." (*Id.* at 39). As with the March 7, 2016 BZA hearing, no one contested the categorization of Homan's use as manufacturing.

{¶21} However, in contrast to the March 7, 2016 hearing, at least one BZA member doubted that manufacturing is a conditional use in the A-2 District. Hank Kaiser ("Kaiser") stated that "[t]his was presented to the Board as an accessory use to [Homan's] nursery, not a manufacturing for kits for guns. I don't have a problem with guns at all * * * [b]ut this is a manufacturing operation in A-2. And we can go through every checklist we have. We're not able to change zoning at this time." (*Id.* at 25). Later, when reviewing the Code, Kaiser remarked that he was "[s]till not seeing manufacturing" as a conditional use in the A-2 District. (*Id.* at 51). (*See*

*id.* at 62). Another BZA member commented that Homan's use was not "presented to [the BZA] as a full-blown manufacturing operation." (*Id.* at 26). Homan's attorney responded to the BZA members' concerns by arguing that the BZA indicated at the March 7, 2016 hearing that Homan's use "is a commercial use, a commercial use can be used in an A-2" and that he "believe[d] [that Homan's use] is * * * a commercial use." (*Id.* at 25-26). (*See id.* at 50-51).

**{¶22}** To further support his application, Homan claimed that the BZA previously granted conditional-use permits for uses similar to his although those uses also do not appear on the Conditional Uses list for the A-2 District. (*See id.* at 22-24). (*See also id.* at 23-24, 35-36, 56). These uses include an "auto collision repair" and "paint shop," a woodshop where "[t]hey build cabinets and furniture," a salvage yard, a carpentry shop, and "a company called Klosterman Concrete." (*Id.* at 22-24). (*See* Sept. 19, 2016 Hearing Exs., Appellant's Exs. 2, 3). Homan submitted printouts from the websites of two of these businesses. (*See* Sept. 19, 2016 Hearing Exs., Appellant's Exs. 2, 3).

**{¶23}** Before holding a final vote on Homan's application, the BZA considered whether Homan's use is consistent with Code Section 1131.02(A), which provides that the BZA must consider whether the use is "in fact a conditional use as established under the provisions of [the Code] and appears on the Conditional Uses list, adopted for the zoning district involved." (Sept. 19, 2016 Tr. at 61-62).

*See* Code Section 1131.02(A). Kaiser stated that manufacturing is not among the listed conditional uses for the A-2 District and "for that reason, it's a no." (Sept. 19, 2016 Tr. at 62). Kaiser stressed that "the [Code] specifically states that we don't want spot zoning. This would be spot zoning, giving a conditional use for manufacturing [in] A-2." (*Id.*). (*See id.* at 67, 80). Homan's attorney noted that at the March hearing, one BZA member stated that Homan's use is a conditional use. (*Id.* at 67-68). Homan's attorney asked: "Am I correct that now the Board is taking a position that * * * manufacturing is not a conditional use?" (*Id.* at 68). Kaiser responded that "[i]t never was." (*Id.*). Despite Kaiser's statement that Homan's use is not a conditional use in the A-2 District, the BZA proceeded to examine the conditional use criteria and checklist. (*Id.* at 62-67, 70-81). As with the March 7, 2016 hearing, the BZA concluded that Homan's use failed to satisfy all of the conditional use criteria. (*See id.* at 62-67, 70-81). A BZA member then moved to deny Homan's application on grounds that "[u]nder 1131.02, item A, [Homan's use] does not meet the requirements for an A-2 zoning and the 9/19/2016 conditional use checklist." (*Id.* at 83). The BZA voted unanimously to deny Homan's application. (*Id.* at 83-85).

{¶24} In its judgment entry affirming the BZA's decision denying Homan's application for a conditional-use permit, the trial court observed that "[f]rom the testimony at both hearings, the evidence as to the proposed use was uncontroverted.

The Applicant's use was a 'machine shop.' This fits the definition of manufacturing." (Doc. No. 59). The trial court further concluded that "[a]lthough the zoning officer and [BZA] initially said [Homan's use] was a conditional use, the [Code] does not allow manufacturing as a conditional use in an A-2 district." (*Id.*). The trial court stated that "[a] conditional use may only be granted by the [BZA] if the zoning resolution authorizes it." (*Id.*). Therefore, the trial court concluded that the BZA "ultimately * * * reached a correct determination" by denying Homan's application for a conditional-use permit despite having originally done so "for the wrong reasons." (*Id.*).

{¶25} We conclude that the trial court did not err in its application or interpretation of the Code and that its decision is supported by the preponderance of reliable, probative, and substantial evidence as a matter of law. Thus, the trial court did not abuse its discretion by affirming the BZA's decision denying Homan's application for a conditional-use permit. First, the trial court did not abuse its discretion by concluding that the preponderance of the evidence supports the BZA's conclusion that Homan's use is "manufacturing" as that term is defined in the Code. Code Section 1123.02 defines "manufacturing" as "[t]he mechanical, chemical, or biological transformation or assembly of materials, substances, or component parts into new products or components, usually for distribution to wholesale markets, or for interplant transfer to industrial users." Homan argues, however, that his use is

not "manufacturing" because the Code's definition of "manufacturing" "ends with the language, 'usually for distribution to wholesale markets, or for interplant transfer to industrial users.'" (Appellant's Reply Brief at 1). According to Homan, because "over ninety percent of what [he] sells is sold directly to consumers, not to wholesale markets or industrial users," his use is not manufacturing as the term is used in the Code. (*Id.*).

{¶26} Homan's argument is based on a flawed construction of the Code's definition of "manufacturing." The definition of "manufacturing" provides that new products or components resulting from one of the listed processes *usually* be distributed to wholesale markets or to industrial users for interplant transfer; it *does not* require that such products or components *exclusively* be distributed to wholesale markets or to industrial users for interplant transfer. *See* Code Section 1123.02. Thus, as long as a "mechanical, chemical, or biological transformation or assembly of materials, substances, or component parts into new products or components" is involved, an enterprise is engaging in "manufacturing" within the meaning of the Code regardless of whether the end product or component is distributed to wholesale markets, to industrial users for interplant transfer, or directly to consumers.

{¶27} That Homan's use involves the "mechanical * * * transformation * * * of materials [or] substances * * * into new products or components," such that his use is manufacturing as that term is defined in the Code, is supported by a

preponderance of the evidence. Homan stated that Homan Jr. was operating a "machine shop" in Homan's barn and that he wanted to have "machinery and manufacturing" on his property. (Mar. 7, 2016 Tr. at 9); (Sept. 19, 2016 Tr. at 16). Homan remarked that the barn contains "CNC machines" and that the machines are used to "machine metal parts." (Mar. 7, 2016 Tr. at 10). Homan explained that the CNC machines on his property function by milling metal stock into specific shapes or designs. (*See id.* at 11). Moreover, Homan Jr. stated that he "make[s] firearms parts." (Sept. 19, 2016 Tr. at 39). Finally, the classification of Homan's use as manufacturing was not challenged at either BZA hearing. Thus, the trial court did not abuse its discretion by concluding that the preponderance of the evidence supports the BZA's conclusion that Homan's use is "manufacturing."

{¶28} Likewise, the trial court did not err by concluding that manufacturing is not a conditional use in the A-2 District. On this point, Homan argues that the Code is ambiguous as to which uses are conditional uses in the A-2 District. (Appellant's Brief at 4). He further argues that, because "[z]oning resolutions * * * are in derogation of common law and should be construed in favor of a property owner," the trial court should have construed the Code's alleged ambiguities in his favor by concluding that his use is a conditional use in the A-2 District. (*Id.*). In support of his argument, Homan highlights that his "use was found to be a conditional use at the March 7 Hearing" before the BZA later concluded that his use

is not a conditional use and that "the [BZA] continually utilized the Conditional Use Criteria Checklist * * *." (*Id.*). Homan also notes that the township zoning inspector "advised [him] that a conditional use permit was needed." (*Id.* at 2).

{¶29} Homan's argument is meritless because the Code unambiguously excludes manufacturing from the Conditional Uses list for the A-2 District. First, some of the confusion over the status of manufacturing as a conditional use in the A-2 District appears to stem from a misapplication of the language of the Code by members of the BZA at the March 7, 2016 hearing. One of the BZA members, after remarking that Homan's use "[is] a conditional use," cited the Code for the proposition that "recreation and commercial" are conditional uses in the A-2 District. (Mar. 7, 2016 Tr. at 17). However, as noted by the attorney representing an adjacent landowner, the language cited by the BZA member actually reads "*[R]ecreation, [C]ommercial*, as in commercial recreation." (Emphasis added.) (*Id.* at 17-18). "Recreation, Commercial" is a defined term in the Code and means:

> Recreation facilities open to the public, established and operated for a profit, such as commercial golf courses, golf driving ranges, swimming pools, ice skating rinks, riding stables, boat docks, fishing piers, boat launching, and other commercial recreation areas and facilities or recreation centers, including commercial swimming

pools, boat docks, fishing piers, boat launching, and food concessions

as an accessory use.

Code Section 1123.02. Clearly, Homan's use is not a golf course, swimming pool, boat dock, or any one of the other enumerated examples of commercial recreational facilities, and it is so dissimilar from those specifically identified examples that it cannot be reasonably considered a type of commercial recreational facility embraced by, but not expressly recognized within, the definition of "Recreation, Commercial." Thus, the phrase "Recreation, Commercial" cannot be a source of ambiguity here because the BZA and the trial court were bound to apply the definition contained in the Code, and this definition is plainly inapplicable to Homan's use. *See Stewart v. Vivian*, 151 Ohio St.3d 574, 2017-Ohio-7526, ¶ 25 ("'Where a statute defines terms used therein, such definition controls in the application of the statute * * *.'"), quoting *Good Samaritan Hosp. of Dayton v. Porterfield*, 29 Ohio St.2d 25, 29 (1972), citing *Terteling Bros., Inc. v. Glander*, 151 Ohio St. 236 (1949) and *Woman's Internatl. Bowling Congress, Inc. v. Porterfield*, 25 Ohio St.2d 271 (1971).

{¶30} Furthermore, the Code is not rendered ambiguous simply because the township zoning inspector and members of the BZA believed Homan's use to be a conditional use or because the BZA utilized the conditional use checklist when considering his application at the March 7 and September 19, 2016 hearings. "An

ordinance is ambiguous when it is subject to various interpretations. Specifically, an ambiguity exists if a reasonable person can find different meanings in the ordinance and if good arguments can be made for either of two contrary positions." *4522 Kenny Rd., L.L.C. v. Columbus Bd. of Zoning Adjustment*, 152 Ohio App.3d 526, 2003-Ohio-1891, ¶ 13 (10th Dist.), citing *Cline v. Ohio Bur. of Motor Vehicles*, 61 Ohio St.3d 93, 96 (1991). "When an ordinance is unambiguous and conveys a clear meaning, a court must only read and follow the words of the ordinance." *Id.*, citing *Fairborn v. DeDomenico*, 114 Ohio App.3d 590, 593 (2d Dist.1996) and *State v. Waddell*, 71 Ohio St.3d 630, 631 (1995). Here, the Code sets forth an exhaustive list of the accepted conditional uses in the A-2 District and manufacturing is not included among them. Thus, because it is omitted from the Conditional Uses list, manufacturing is not a conditional use in the A-2 District. *See Gerzeny*, 62 Ohio St.2d at 343 ("'The inclusion of specified uses in each district * * * indicates a legislative judgment to exclude other uses.'"), quoting *Mobil Oil Corp. v. Rocky River*, 38 Ohio St.2d 23, 29 (1974). As discussed above, manufacturing does not fall within the definition of "Recreation, Commercial," and it does not fit within the definitions of any of the other uses that are conditionally permitted in the A-2 District. *See* Code Section 1127.18(A)-(M). *See also* Code Section 1123.02. That multiple people interpreted or applied the Code to conclude that manufacturing is a conditional use in the A-2 District despite its clear absence from the Conditional

Uses list for the A-2 District does not mean that there is a good argument that manufacturing is conditionally permitted or that the Code is ambiguous; rather, it suggests only that those people interpreted and applied the Code in the same unreasonable, erroneous manner. Accordingly, by simply following the clear words of the Code, the trial court did not err by concluding that manufacturing is not conditionally permitted in the A-2 District.

{¶31} Finally, because the trial court did not abuse its discretion by upholding the BZA's conclusion that Homan's use is manufacturing and because it did not err by concluding that manufacturing is not conditionally permitted in the A-2 District, the trial court did not abuse its discretion by affirming the BZA's decision to deny Homan's application for a conditional-use permit. It is well-established that "township board[s] of zoning appeals may grant conditional use zoning permits, *but only if* such uses are provided for in the township's zoning resolution." (Emphasis sic.) *Genovese*, 2006-Ohio-1174, at ¶ 10, citing *Gerzeny* at 344. Here, the Code does not specifically provide for manufacturing as a conditional use in the A-2 District. Because the Code does not list manufacturing as a conditional use in the A-2 District, the BZA did not have the authority to grant Homan's application for a conditional-use permit. *See Genovese* at ¶ 11-13 (reversing a common pleas court's affirmance of a zoning board's grant of a conditional-use permit to allow camping in a district where camping was not among

the six specifically listed conditional uses); *Collins v. Butler Cty. Bd. of Zoning Appeals*, 12th Dist. Butler No. CA 86-01-001, 1986 WL 13269, *2 (Nov. 24, 1986) (reversing a common pleas court's affirmance of a zoning board's grant of a conditional-use permit for the operation of a sports park in a district where sports parks were not specifically designated as conditional uses). *See also Hart v. Somerford Twp. Bd. of Trustees*, 12th Dist. Butler No. 2007-05-019, 2008-Ohio-1793, ¶ 38; *Parker v. Swan Creek Twp. Bd. of Zoning Appeals*, 6th Dist. Fulton Nos. F-04-035, F-04-036 and F-04-038, 2006-Ohio-863, ¶ 25, 27; *Dayton Inv. Group 6 v. Speedy Muffler King, Inc.*, 2d Dist. Montgomery No. 10328, 1987 WL 15721, *6 (Aug. 12, 1987); *Barrick v. Harter*, 5th Dist. Stark No. CA-6858, 1986 WL 238, *2 (June 30, 1986).

**{¶32}** In addition, the Code requires that the BZA "find adequate evidence showing that [a proposed use] * * * *[i]s in fact a conditional use* as established under the provisions of [the Code] and *appears on the Conditional Uses list*, adopted for the zoning district involved." (Emphasis added.) Code Section 1131.02(A). Moreover, in granting an application for a conditional-use permit, the BZA must "mak[e] an *affirmative finding* in writing *that the proposed conditional use is to be located in a district wherein such use may be conditionally permitted * * *.*" (Emphasis added.) Code Section 1131.03(A). Thus, the Code, independent of other sources of law, does not authorize the BZA to grant a conditional-use permit unless

a proposed conditional use is one of the specified conditional uses listed in the Conditional Uses list for the applicable zoning district.

**{¶33}** Our conclusion is the same irrespective of whether uses similar to Homan's use may have been granted conditional-use permits by the BZA in the past or are currently operating in the A-2 District without conditional-use permits. "[T]he questionable granting of one conditional zoning certificate cannot be used as the sole basis for requiring" the grant of another. *Chorpenning v. Tallmadge*, 9th Dist. Summit No. C.A. NO. 11153, 1984 WL 4152, *2 (Jan. 25, 1984). Moreover, there is insufficient evidence in the record demonstrating that the BZA has granted questionable conditional-use permits in the past or that Homan was actually treated differently than other landowners in the A-2 District. *See Kisil*, 12 Ohio St.3d at 33 (concluding that a common pleas court correctly determined that a denial of a variance was arbitrary and unreasonable, in part, because the record contained sufficient evidence from which the common pleas court could conclude that the applicant was treated differently from similarly situated property owners).

**{¶34}** For these reasons, we conclude that the trial court did not err in its application or interpretation of the law and that its decision is supported by the preponderance of reliable, probative, and substantial evidence as a matter of law. Therefore, the trial court did not abuse its discretion either by concluding that the

BZA's decision denying Homan's application for a conditional-use permit was supported by the preponderance of the evidence or by affirming the BZA's decision.

**{¶35}** Homan's first and second assignments of error are overruled.

**{¶36}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI, P.J. and SHAW, J., concur.**

**/jlr**